Jimmy Wayne BAILEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–03–00458–CR.

Court of Appeals of Texas,
El Paso.

May 19, 2005.

Laurie Kay Ewing, Dallas, for Appellant.

John R. Roach, Crim. Dist. Atty., McKinney, for appellee.

Before Panel No. 5 BARAJAS, C.J., CHEW, J., and HILL, C.J.(Retired).*

## *OPINION*

JOHN HILL, Chief Justice (Retired).

Jimmy Wayne Bailey appeals his conviction by a jury of the offense of aggravated sexual assault of a child. The jury assessed his punishment at 18 years in the Texas Department of Criminal Justice, Institutional Division. He contends in four points of error on appeal that the trial court abused its discretion in denying his pretrial motion to suppress two oral statements and two written statements that he had given. We affirm.

 Bailey asserts in Point of Error One that the trial court abused its discretion in denying his pretrial motion to suppress oral statements made to Secret Service Agent Richard Hudson. The trial court is the exclusive trier of fact and

judge of the credibility of the witnesses and the weight to be given their testimony at a hearing on a motion to suppress evidence. *Cobb v. State*, 85 S.W.3d 258, 271 n.50 (Tex.Crim.App.2002). Furthermore, "trial courts have broad discretion in their evidentiary rulings and [they] . . . are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Cobb*, 85 S.W.3d at 271 n.50, *quoting Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Mixed questions of law and fact that turn on the credibility and demeanor of a witness are reviewed under the almost-total-deference standard, and mixed questions of law and fact that do not turn on the credibility and demeanor of a witness are review *de novo*. *Id.* Also, we examine the evidence in the light most favorable to the trial courts ruling. *Id.* In determining whether the record supports a trial court's decision, we generally consider only evidence presented at the suppression hearing because the ruling was based on it rather than the evidence introduced later. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App.1996). However, when the alleged error is the admission of evidence at trial and the issue was consensually litigated there, we will consider the evidence to have been re-opened. *Barley v. State*, 906 S.W.2d 27, 31 n. 2 (Tex.Crim.App.1995). At trial, evidence was presented, without objection, which related to the issue of custodial interrogation. We hold that the issue was re-opened at trial. Therefore, in ruling on Appellant's issue, we will consider evidence relating to custodial interrogation that was presented both upon the hearing on the motion and during the trial.

Bailey was the stepfather of the complainant S.W., a child less than two years old. When he became suspected of sexually abusing this child, Bailey denied it and

* Hill, C.J., (Retired)(Sitting by Assignment).

agreed to a polygraph examination. Richard Hudson, an officer of the United States Secret Service who runs polygraphs and conducts interviews for the service, conducted the examination. He indicated that he conducted such tests on a volunteer basis for the Collin County Children's Advocacy Center. The polygraph examination was conducted at the Center. Bailey was brought to the Center from jail, where he was being held on unrelated charges. After advising Bailey that he is an officer for the United States Secret Service, Hudson advised him of his rights prior to the beginning of the polygraph examination. After the polygraph examination proved inconclusive, Hudson asked Bailey why he did not pass the examination. In the course of their conversation, Bailey admitted to Hudson that he inserted his finger into the child's vagina in an effort to stop her from crying.

Agent Hudson did not record Bailey's oral statement because to do so was contrary to policies of the United States Secret Service. Agent Hudson acknowledged that even though he does such work voluntarily, he sends a report to his headquarters for review, which then sends a copy back to local law enforcement. At trial, he noted that he is a Secret Service officer twenty-four hours per day and seven days per week, and that when he conducted the examination, he did it during Secret Service time because it was a regular day in which he was collecting a regular paycheck from the Secret Service. He also acknowledged having received training either in the Secret Service or as a former Dallas police detective in interrogation techniques. When asked at trial if he had used psychological interrogation techniques in questioning Bailey, Hudson stated, "I would say that any interview has a certain amount of psychological. The very presence of a law enforcement officer in the room is psychological, I mean." When witnessing a written statement given to Michelle Hiza of the Texas Department of Child Protective Services, or CPS, he identified himself as an agent of the United States Secret Service and included an identification number.

Bailey objected to the introduction of the oral statement he made to Hudson on the basis that the State did not comply with the requirement of Article 38.22, § 3(a)(1) that a recording be made of the statement in order for it to be admissible. Tex.Code Crim.Proc.Ann. art. 38.22, § 3(a)(1)(Vernon 2005). By its terms, the statute applies only to statements that are made as a result of custodial interrogation. Tex.Code Crim.Proc.Ann. art. 38.22, § 3(a). The State contends that Bailey's statement was not made as a result of custodial interrogation. As we understand the trial court's ruling, the court implicitly held that the interrogation was non-custodial because at the time Hudson took the polygraph examination and interrogated Bailey, he was an agent of Child Protective Services, not the police, and was therefore not a law enforcement agent. The State contends the trial court did not abuse its discretion in making this finding.

It is undisputed that the oral statement that Bailey made to Hudson would not be admissible if it were the product of a custodial interrogation because it did not meet the requirement of Article 38.22, § 3(a)(1) of the Texas Code of Criminal Procedure that it be recorded. The determining issue, then, is whether Bailey's oral statement to Hudson stemmed from custodial interrogation.

■ At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App.1991). The judge may believe or disbelieve any or all

of any witness's testimony. *Id.* The trial court's findings should not be disturbed absent a clear abuse of discretion. *Id.*

The Texas Court of Criminal Appeals has held that it is difficult to formulate a general rule to distinguish custodial interrogation from non-custodial interrogation. *Ancira v. State,* 516 S.W.2d 924, 927 (Tex. Crim.App.1974). *Miranda* defines "custodial interrogation" as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966).

In this case, Hudson was a law enforcement officer who initiated questioning of Bailey. Bailey was in custody at the time of the polygraph examination, although it was on unrelated charges. Consequently, it would appear that the facts as we have related them show that Bailey's oral statement was the product of custodial interrogation and therefore inadmissible.

██ The State argues in support of the trial court's finding that Hudson, although a law enforcement officer, was off-duty at the time of his interrogation of Bailey, and was merely acting as an agent for Child Protective Services. First, we hold that the trial court's finding that Hudson was off-duty as a Secret Service investigator is not supported by the evidence. Hudson told Bailey that he was a Secret Service agent. The reason there was no recording of his interview with Bailey was that he conducted the examination in accordance with the procedures of the Secret Service. He submitted a report of the examination to the Secret Service, subject to their review. Hudson acknowledged during the trial that he was a Secret Service agent twenty-four hours per day, seven days per week, and that his interview with Bailey was on Secret Service time. Hudson,

when asked if he used psychological interrogation techniques in his interview with Bailey, stated that the mere presence of a law enforcement officer was psychological. When witnessing a written statement by Bailey, Hudson identified himself as an agent of the Secret Service. Rather than showing that Hudson was off-duty, the evidence shows that he was permitted by the Secret Service to volunteer to perform such polygraph examinations while on duty, time permitting.

Even if we were to accept the trial court's ruling that Hudson was an off-duty officer who was merely an agent of Michelle Hiza, a worker for Child Protective Services, we are faced with the fact that a worker for Child Protective Services may or may not be acting as an agent for law enforcement in such situations. *Compare Paez v. State,* 681 S.W.2d 34, 38 (Tex.Crim. App.1984) and *Cates v. State,* 776 S.W.2d 170, 174 (Tex.Crim.App.1989). Finding that the factual situation in this case more closely resembles that of *Cates* than that of *Paez,* we hold that had Michelle Hiza herself conducted the interrogation, as did Hudson, she would have been an agent of law enforcement.

The State, in arguing that the interview with Hudson did not constitute custodial interrogation, emphasizes that Bailey was not confined on sexual assault charges at the time of the interview, that the decision to participate in a polygraph examination was his, that there is no evidence that the interview was arranged to avoid the requirements of Article 38.22 of the Texas Code of Criminal Procedure, and that the police did not orchestrate the interview. In *Cates,* the Court of Criminal Appeals held that a DHR investigator, when conducting an interview with one who is the central figure in a criminal investigation concerning child abuse, is acting as an agent of law enforcement because her

function in pursuing a child abuser is for the enforcement of Texas child abuse laws. *Cates,* 776 S.W.2d at 173. The investigator has that status even though the investigator is not acting at the request or as a surrogate for a traditional police agency. *Id.* If Michelle Hiza's status, had she been conducting the interview, would have been that of an agent for law enforcement, then Hudson, if acting as her agent as the State argues, would also have been acting as an agent for law enforcement. The State notes that there was no evidence that the interview was arranged to avoid the requirements of Article 38.22, but if it avoids the requirements, it makes no difference whether it was arranged to do so or not.

■■ We will next consider the State's position that Bailey's oral statement given to Hudson was not the product of custodial interrogation because it was his decision to participate in the polygraph examination, the examination was not held in a detention facility, and he was not charged with sexual abuse at the time the interview was conducted. In determining whether an individual is in custody, we examine all of the circumstances surrounding the interrogation to determine whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *United States v. Chavez,* 281 F.3d 479, 486 (5th Cir.2002). The issue is how a reasonable man, innocent of any crime, in the suspects position would have understood his situation. *Dancy v. State,* 728 S.W.2d 772, 778 (Tex.Crim.App. 1987).

Michelle Hiza testified that she was assigned the investigation of an outcry that the victim had made that Bailey had touched her improperly. She indicated that she followed CPS policy by informing Detective Tony Bradley of the referral. She denied that he in any way directed her as to how she should conduct her investi-

gation. She said she contacted Bailey while he was in the Collin County jail on other charges, and that as far as she knew, he had not been arrested for any sexual abuse. She acknowledged that Bailey told her that he was arrested on warrants, presumably on the other charges, fifteen minutes after receiving a call from CPS about the sexual abuse charge.

Hiza testified that she suggested to Bailey that the only way to clear up the matter was to do a polygraph. She said Bailey wanted to do the polygraph in order to clear the matter up because he knew that he did not do anything. Detective Tony Bradley took Bailey from the jail to the Collin County Children's Advocacy Center. Hudson testified that Bailey was not in handcuffs, and was free to move his hands and walk about the room. Hudson said that the oral statement was given after he asked Bailey why he had not passed the exam.

In summary, Bailey was in custody on other charges for which he had been arrested shortly after receiving notification from CPS concerning the sexual abuse charges. He was the focus of the investigation because the child had accused him of being the one who had touched her improperly. He agreed to take a polygraph examination in order to clear himself of the charges. A sheriff's office detective took him from the jail to the Center for the purpose of the polygraph examination. The polygraph examiner informed Bailey that he was an agent of the United States Secret Service. Before obtaining Bailey's oral statement, the examiner asked Bailey why he did not pass the polygraph examination. There is no indication that he was told by anyone whether he could or could not leave during his interview with the polygraph examiner. Considering the totality of the circumstances, we hold that a reasonably inno-

cent person in Bailey's position would have thought that he was not free to leave. Consequently, the trial court abused its discretion by overruling Bailey's objection to the oral statement he made to Hudson.

The State relies in part upon the case of *Cagle v. State*, 23 S.W.3d 590, 592 (Tex. App.-Fort Worth 2000, pet. refd). We find that case to be distinguishable. In *Cagle*, the Court held that the defendant was not in custody when he went to an office of Child Protective Services voluntarily, he was not placed under arrest, there was testimony that he could leave at any time, and where he did, in fact, freely leave the office after the meeting. *Id.* In the case at bar, Bailey was in confinement for other offenses, was brought to the Center by a sheriff's deputy, the examination was conducted by a law enforcement officer, and Bailey was returned to jail after the interview. Because the oral statement made by Bailey to Hudson was reduced to writing and also introduced into evidence, we cannot make a harm analysis until we have determined whether those other statements were properly admitted.

■ Bailey urges in Point of Error Two that the trial court abused its discretion in overruling his motion to suppress an oral statement that he made to Michelle Hiza, the CPS investigator. Michelle Hiza testified that after Bailey had made an oral statement to Hudson, she went in and he told her that he was high on cocaine, and that he grabbed the child's vagina, inserted his finger into it, and caused it to bleed. We hold that the trial court abused its discretion in overruling Bailey's motion to suppress his oral statement to Hiza, also for the reason that it was an unrecorded oral statement that resulted from custodial interrogation. As with the other oral statement, we cannot make a harm analysis until our consideration of Bailey's other points.

Bailey insists in Point of Error Three that the trial court abused its discretion by overruling his motion to suppress a written statement that he gave to Michelle Hiza and Agent Hudson. Article 38.22 of the Texas Code of Criminal Procedure provides that no written statement made by an accused as a result of custodial interrogation is admissible as evidence unless on its face it contains what are the equivalent of *Miranda* warnings and that the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning. Tex.Code Crim.Proc.Ann. art. 38.22, § 2. The written statement that Bailey gave Hiza contains neither the warnings nor any indication that Bailey waived his rights as contained in the warnings. The State contends that the written statement was not the result of custodial interrogation. Inasmuch as we have held that the statement was the result of custodial interrogation, we disagree. Therefore, the trial court abused its discretion by overruling Bailey's motion to suppress this written statement. We cannot make a harm analysis until we have considered Bailey's final point.

■ Bailey contends in Point of Error Four that the trial court abused its discretion by overruling his motion to suppress a written statement that he gave to Detective Ida Wei of the McKinney Police Department. Bailey was returned to jail after the polygraph examination and after he had given oral and written statements to Hudson and Hiza. Approximately four hours after the start of the polygraph examination, he gave another written statement to Detective Wei. That written statement contained the proper warnings and reflected that Bailey voluntarily waived his rights as set forth in the warnings. Bailey contends that although this statement meets the requirements of Article 38.22,

we should hold that it was improperly admitted because it was obtained as a result of the prior statements that we have found to be inadmissible because of a failure to record the oral statements and the failure to have warnings and waiver of rights on the face of the written statement.

■ Where, as here, a prior voluntary statement is rendered inadmissible for its failure to meet certain statutory requirements, ordinarily proof of proper warnings preceding the subsequent written statement, and a defendants willingness under the totality of circumstances to waive his or her rights following those warnings, should suffice to meet the State's burden on the issue of voluntariness. *Griffin v. State,* 765 S.W.2d 422, 430 (Tex.Crim.App. 1989). The mere possibility that a defendant might be at a psychological disadvantage because of having given a prior inadmissible statement, without evidentiary corroboration, is insufficient to rebut the State's otherwise adequate showing of voluntariness. *Id.* We therefore hold that the trial court did not abuse its discretion in overruling Bailey's motion to suppress the written statement he gave to Detective Wei because the court's finding that Bailey's written statement was voluntary and met the requirements of Article 38.22 is supported by the evidence.

Bailey urges that the trial court did abuse its discretion because the taint of the inadmissible statements was not so attenuated as to dissipate the taint. He relies upon *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and *Perkins v. State,* 779 S.W.2d 918 (Tex.App.-Dallas 1989, no pet.). Both *Brown* and *Wong Sun* are distinguishable because each of those cases involved statements obtained after an illegal search or arrest, in violation of the Fourth Amendment of the United States. *Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2262, 45 L.Ed.2d at 427; *Wong Sun,* 371 U.S. at 485–86, 83 S.Ct. at 416, 9 L.Ed.2d at 454. The United ed States Supreme Court held in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) that the admissibility of a voluntary statement given after a statement has been given without the benefit of *Miranda* warnings turns solely on whether it is knowingly and voluntarily made. *Id.* at 309, 105 S.Ct. at 1293, 84 L.Ed.2d at 232. Bailey does not contend that the written statement that he gave to Detective Wei was involuntary, only that it was given after oral statements and written statements were given that did not comply with the statutory requirements of Article 38.22. In *Perkins,* the Court held that a statement was admissible because any causal chain linking a confession to an earlier confession in which inadequate *Miranda* warnings were given was so attenuated as to purge the second of any taint associated with the first. *Perkins,* 779 S.W.2d at 921, 923. While we agree with the holding in Perkins that the second statement was admissible, we note that the Court's discussion as to why Perkins's voluntary second statement was admissible does not seem to follow the ruling of the United States Supreme Court in *Oregon v. Elstad.* We overrule Point of Error Four.

■ We now turn to a harm analysis with respect to the errors we found in our discussion of Points of Error One, Two, and Three. In Bailey's written statement to Detective Wei, he admitted poking the child in the vaginal area to shut her up. He said that it was under a half of an inch of his index finger. This is substantially the same as the oral statement he made to Hudson, the mark he made for Hudson on the tracing of his hand to show how far in he put his finger, and the oral and written statement he gave to Hiza. Inasmuch as

there was no contention that Bailey had not received *Miranda* warnings prior to the making of the earlier statements, or that his making of those statements was involuntary, we conclude that the trial courts error in admitting his oral statements to Hudson and his oral and written statements to Hiza was not a constitutional error. We are to disregard any error that is not a constitutional error if it does not affect substantial rights. Tex.R.App.P. 44.2(b). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). In view of the proper admission of substantially the same statement, we hold that the trial court's admissions of Bailey's earlier statements did not have a substantial and injurious effect or influence in determining the jury's verdict; therefore, it did not affect any substantial right. Had the trial court's error been constitutional, we would be required to reverse unless we determined beyond a reasonable doubt that the error did not contribute to Bailey's conviction or punishment. Tex.R.App.P. 44.2(a). Again, given the fact that the statements improperly admitted were substantially the same as that statement that was properly admitted, we hold beyond a reasonable doubt that the trial court's error in admitting Bailey's prior statements did not contribute to his conviction or his punishment. We therefore overrule Points of Error One, Two, and Three.

The judgment is affirmed.