

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00057-CR

STEPHEN ALLEN WRIGHT                                         APPELLANT

V.

THE STATE OF TEXAS                                               STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Stephen Allen Wright appeals his conviction for possession with intent to deliver four or more but less than 200 grams of oxycodone. We affirm.

### Pills Turn Up from Up-turned Car and then Vanish

Sometime around nine o'clock in the morning on March 13, 2011, Appellant had to be cut out of his car after he flipped it upside down. As his

----

[1]*See* Tex. R. App. P. 47.4.

rescuers strapped him to a gurney for Care Flight transport, he demanded that they retrieve from the up-ended car a zippered, sub-zero lunch bag and that it accompany him to the hospital.

At the hospital, emergency room nurses insisted they would have to move the bag so they could unstrap Appellant from the gurney. He reluctantly let them do so only after they assured him they would not take anything from it. A nurse placed the bag atop a defibrillator next to Appellant's head, so he could see it at all times.

The nurse asked Appellant if he was currently taking any medications, to which he said yes, and then she asked if they were in his bag. When he replied that they were, she opened it and discovered multiple prescription drug bottles inside. None of the labels on the bottles bore Appellant's name, however, and several had been altered or removed entirely.

Because Appellant had injured his head, was still in a neck brace, and was at high risk for a spinal injury, he was held by hospital staff for monitoring. As the nurses helped him change into a hospital gown, a large bundle of cash plopped from his trousers. Another pocket yielded a second bundle. Together, the bundles totaled more than $4,700.00. Hospital staff collected the cash and placed it with the medications in Appellant's lunch bag. The nurses then alerted the hospital security guards, who called the police.

When Officer Bobby Smith arrived, he examined the lunch bag and its contents, which in addition to the prescription drugs and cash, included

2

Appellant's wallet and photo ID. He asked Appellant if the bag belonged to him and Appellant told him it did. When the officer asked who owned the pills, Appellant said he was holding them for a "friend." He could not, however, provide any contact information for this "friend."

Officer Smith then contacted Officer Jose Johnson, who had been a first responder at the scene of Appellant's wreck. Officer Johnson joined Officer Smith at the hospital and then spoke to the emergency room nurse who had seen the pill bottles in Appellant's bag. Officer Johnson examined the bottles, cash, and bag (which he recognized from the scene of the accident) and then asked Appellant whose prescription drugs he had and why they were in his possession. Appellant replied, as he had previously to Officer Smith, that he was holding the bottles for a "friend." He would not elaborate on who the "friend" was nor did he verify that he was holding the pills for anyone whose name was listed on the labels. At last, he exclaimed that he had the drugs because he was "a f-----g addict." Officer Johnson then placed Appellant under arrest, and Appellant was taken to jail.

Officer Johnson seized the drugs, boxed them up, and checked them into the police department's property room for safekeeping. The record shows that the drugs were checked out of the property room only once—when a few days after they were checked in, Jason Allison, senior forensic scientist for the police department's crime lab, checked them out for analysis. Allison's tests detected

oxycodone, a controlled substance. The record shows that Allison returned the drugs to the property room after testing.

The trial court appointed Appellant a lawyer to provide defense representation shortly after the arrest. Within a month, Appellant was indicted for possession of oxycodone with intent to deliver. The record does not reveal whether Appellant tried to check the drugs out from the property room for examination or independent analysis at any time before his case went to trial in January 2012.[2]

On the first day of trial, after a lunch break between jury selection and the State's first witness, the prosecutor told Appellant and the trial court that property-room personnel were unable to locate the drugs but were still looking for them. Neither Appellant nor the State asked for a continuance, and the trial resumed.

The State's evidence included photographs of the pill bottles (State's Exhibit 2) and of the cash (State's Exhibit 3) in addition to the crime lab's report identifying the drugs as oxycodone (State's Exhibit 6). The jury found Appellant guilty, and after considering punishment evidence, which included proof that Appellant had already served two terms in the penitentiary, it assessed 40 years' confinement. The trial court sentenced Appellant accordingly.

---

[2]The sub-zero lunch bag, Appellant's wallet and ID, a pocket knife, a debit card, and the cash, however, were released to a relative designated by Appellant.

4

**Missing Evidence Complaints Forfeited**

In his first two issues, Appellant complains that the trial court took "no corrective action" when the State failed to produce the drugs at trial. By taking "no corrective action," he argues, the trial court violated his due process rights under the United States Constitution and his due course of law rights under the Texas constitution because "[t]he labels on the pill bottles could have been used to exonerate [him]."[3]

Although Appellant does not identify precisely what "corrective action" he faults the trial court for not taking, he cites a case in his brief from the Waco court of appeals, in which that court recognized three "remedies for the loss or destruction of evidence: (1) dismissal; (2) exclusion of related evidence; or (3) an adverse inference instruction." *Pena v. State*, 226 S.W.3d 634, 655 (Tex. App.— Waco 2007), *rev'd on other grounds*, 285 S.W.3d 459, 465 (Tex. Crim. App. 2009) (*Pena III*).

The record does not show that Appellant asked the trial court to dismiss his case or to issue any adverse-inference jury instruction based upon lost evidence. The record does show, however, that Appellant asked the trial court to suppress evidence related to the evidence that was lost. Specifically, the record

---

[3]Appellant does not explain how the labels "could have been used to exonerate" him. Because we hold that Appellant has otherwise failed to preserve his claim for review, however, we need not delve into whether or how the labels could have been so used.

shows that Appellant objected to three of the State's exhibits: those numbered 2, 3, and 6.[4]

Given that suppression of these three exhibits is the only remedy related to the lost evidence Appellant actually asked for at trial, we will treat his first two issues as claims that the trial court erred by not suppressing State's Exhibits 2, 3, and 6, rather than claims that the trial court erred by not taking some other remedy that Appellant did not ask for.[5]

Although the record shows that Appellant asked the trial court to suppress the exhibits, the record also shows that when Appellant heard that the evidence stored in the property room had been misplaced, he did not discuss with the trial court any of the theories that he now presents on appeal. That is, he did not argue that federal due process or state due course of law constitutional protections required the trial court to take some "corrective action" because the State "lost or destroyed" evidence.[6] Nor did he argue that suppression was

_____

[4]State's Exhibit 2 is a photograph of the bottles containing the drugs witnesses testified the police seized from Appellant at the hospital; State's 3 is a photograph depicting two rubber-banded bundles of currency and a zippered bank deposit bag that the witnesses testified had also been seized; and State's 6 is a report prepared by the crime lab detailing the results of its analysis of the drugs depicted in State's 2.

[5]We need not make this assumption regarding Appellant's third issue, discussed below, because his brief clearly states in that issue that the trial court erred by not suppressing evidence.

[6]While ticking off a laundry list of objections to State's Exhibit 6, Appellant did invoke, without elaboration or argument, "[s]tate and federal due process."

6

required because the police engaged in bad faith.[7]  Instead, the record shows that as soon as Appellant learned that the State's evidence had been lost, he urged the trial court to suppress the exhibits that had not been lost because the chain of custody was defective:

> [Defense Counsel]:  Your Honor, I believe the facts are going to show that [Appellant] was in a car wreck.  He was taken to the hospital.  When he got to the hospital, somebody found a bag that had some kind of narcotics in it.  The offense reports don't show who found the bag, where it came from, who searched it, who took it, who gave it to the police.  All of that kind of stuff is what I'm talking about . . . .
>
> . . . .
>
> [T]here's nothing in the reports about how the items got from the wreck to the hospital, who discovered them at the wreck, who took them into custody, how they got from the wreck to the hospital for the nurse to find them.  And that's the -- that's what I'm talking about.
>
> . . . .
>
> [T]he discovery documents show that . . . the wreck was investigated by police officers, that [Appellant] was taken by either -- by someone from the wreck site to the -- to the hospital.  The drugs somehow got from the wreck site to the hospital.  That -- who took the drugs, got custody of them, put them at the hospital, we don't know who did that, so we don't know what kind of violation it is.
>
> . . . .
>
> We're going -- we contend that there is -- the chain of custody -- I understand the law is that the chain of custody goes to the weight of the -- to the weight of the evidence and not the

---

[7]Appellant claims the record shows the trial court prevented him from presenting evidence of bad faith.  Our review of the pages he cites, however, do not support this claim.

7

admissibility.  However, there is [sic] a lot of cases that say the chain of custody is so bad that that does go to the admissibility.  And in this case, we're -- we believe the chain of custody is such -- is so bad that it's going to go to the admissibility.

Appellant later re-urged his suppression arguments based on a Fourth Amendment illegal-search-and-seizure theory:

[Defense Counsel]:  Your Honor, at this point we again renew our, for lack of a better word, motion to suppress based upon the subzero bag.  According to Officer Johnson, that bag was seized by someone, either a fire department or EMS guy, who is employed by the government.  Therefore, it was the government that was seizing those items and that invokes [Appellant's] constitutional rights and we would again urge the Court to consider that in the motion to suppress.

Finally, the record shows that when the State offered State's Exhibits 2 and 3, Appellant objected that "they are not relevant to this case, because there [had] been no showing that they were actually -- the items depicted herein were in [Appellant's] possession."  In other words, Appellant objected on the grounds of improper chain of custody, search and seizure, and relevancy—but not, as he argues in his brief, because "the State lost or destroyed evidence and the trial court erred in taking no corrective action."

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired.  Tex. R. App. P. 33.1(a); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Williams v. State*, 402 S.W.3d 425, 437 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *Trung The Luu v. State*, No. 14-12-00665-CR, 2013 WL 4487564, at *2 (Tex. App.—Houston [14th Dist.] Aug. 22, 2013, no

8

pet.).  The appellate complaint must comport with the specific objection made at trial.  *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Williams*, 402 S.W.3d at 437.  Even claims of constitutional error may be forfeited by failure to preserve them at trial.  *See Broxton*, 909 S.W.2d at 918; *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

The record does not reflect nor does Appellant cite anywhere in the record that he asserted in the trial court that federal due process or state due course of law required the trial court to take some "corrective action" (whether dismissal, suppression, or otherwise) because the State had lost evidence.  In *Pena III*, the court of criminal appeals reiterated long-standing concepts of error preservation:

> The complaining party bears the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law *as well as the underlying rationale*.  Error preservation does not involve a hyper-technical or formalistic use of words or phrases; instead, "[s]traight forward communication in plain English" is sufficient.  To avoid forfeiting a complaint on appeal, the party must "let the trial judge know what he wants, *why he thinks he is entitled to it*, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it."

*Pena*, 285 S.W.3d at 463–64 (citations omitted and emphasis added).

Because Appellant's arguments on appeal that the trial court erred by not suppressing Exhibits 2, 3, and 6 do not comport with the objections he raised in the trial court to those exhibits, he has failed to preserve his first two issues for appellate review.  *See* Tex. R. App. P. 33.1(2); *Pena III*, 285 S.W.3d at 463–64; *Wilson*, 71 S.W.3d at 349; *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App.

9

1999), *cert. denied*, 531 U.S. 828 (2000); *Williams*, 402 S.W.3d at 437. Accordingly, we overrule Appellant's first and second issues.

In his third issue, Appellant contends that he is entitled to a reversal because the trial court "applied the wrong test" when it decided to admit the crime lab report (State's Exhibit 6). Again, though, this is a theory that Appellant did not present to the trial court. The record shows that when the State offered exhibit 6, Appellant objected on "hearsay," "chain of custody," "Sixth Amendment," "[s]tate and federal due process," and "14th amendment to the State [sic] constitution" grounds. But the record does not show that Appellant argued to the trial court, as he does for the first time on appeal, that the trial court applied the "wrong test" when it determined whether the lab report that was admitted as State's Exhibit 6 should have been suppressed.

We have noted that, among other objections to State's Exhibit 6, Appellant invoked without elaboration or argument "[s]tate and federal due process." However, such "shotgun" objections, which cite many grounds for the objection, unaccompanied by argument or explanation, and which serve only to obscure the specific grounds of the objection, do not preserve a complaint for appellate review. *See Johnson v. State*, 263 S.W.3d 287, 290 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd); *Webb v. State*, 899 S.W.2d 814, 818 (Tex. App.—Waco 1995, pet. ref'd); *Berry v. State*, 813 S.W.2d 636, 639 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd).

As with his first two issues, Appellant has not preserved this claim for review. *See* Tex. R. App. P. 33.1(2); *Wilson*, 71 S.W.3d at 349; *Ibarra*, 11 S.W.3d at 197; *Williams*, 402 S.W.3d at 437. Accordingly, we overrule Appellant's third issue.

**Appellant's Statements to Officers in the Hospital were Harmless**

In his fourth issue, Appellant contends that the trial court abused its discretion by admitting un-*Mirandized* "statements" Appellant gave police before the hospital was ready to discharge him. Appellant's briefing does not specify precisely which statements he contends the trial court erred to admit but the State reasons that Appellant's complaint concerns "roughly four admissions" that he possessed the lunch bag in which the drugs were found and one that he was an addict.

As a preliminary matter, the State contends that Appellant's claim on appeal does not comport with his objection at trial. It notes that at trial Appellant objected that code of criminal procedure article 38.22 required the trial court to suppress the statements because they were given after police officers had arrested him but before they had read him the *Miranda* warnings. The State contrasts that objection with Appellant's claim on appeal that, largely due to the actions of hospital security officers (who Appellant claims acted as agents of the police department), Appellant was in custody by the time he answered questions posed by the police. It appears the difference lies in who had exerted custody over Appellant when he answered the police officer's questions. Because he

11

objected at trial that he was in the custody of police officers and on appeal claims that he was in the custody of hospital security acting as agents of the police, arguably the objection and claim do not comport.

This is a closer call than those we considered with the first three issues. But thick or thin, it is a hair we need not split because we are not sold on Appellant's claim that the trial court abused its discretion by admitting Appellant's statements because they were the product of custodial interrogation conducted without proper *Miranda* warnings. *See Wilson v. Coon*, 808 F.2d 688, 690 (8th Cir. 1987) (holding that reasonable person would perceive physical restraint by ambulance personnel as imposed only for medical examination, not police interrogation); *see also People v. DeBoer*, 829 P.2d 447, 449 (Colo. App. 1991) (defendant confined to hospital bed not in custody); *State v. DesLaurier*, 646 A.2d 108, 110, 112–13 (Conn. 1994) (defendant restrained in neckbrace on bodyboard in ambulance not in custody); *Cummings v. State*, 341 A.2d 294, 300–02 (Md. Ct. Spec. App. 1975) ("The consensus of American case law is that the questioning of a suspect who is confined in a hospital but who is not under arrest is not a custodial interrogation within the contemplation of Miranda."); *Commonwealth v. LaFleur*, 791 N.E.2d 380, 382–84 (Mass. App. Ct. 2003) (defendant not in custody when physically restrained by EMTs during brief questioning); *State v. Lapp*, 658 P.2d 400, 403 (Mont. 1983) (hospital interrogation noncustodial where no coercion used to overcome suspect's freedom of choice); *People v. Ripic*, 182 A.D.2d 226, 231–32 (N.Y. 1992)

12

(defendant not in custody even though restrained by medical devices in hospital bed); *State v. Tyson*, 643 P.2d 396, 399 (Or. App. 1982) (hospital interrogation noncustodial absent evidence police would have detained defendant had he attempted to leave). *But see Robinson v. State*, 224 So.2d 675, 678 (Ala. Ct. App. 1969) (interrogation custodial where defendant was "being detained" in hospital bed); *Commonwealth v. D'Nicuola*, 292 A.2d 333, 335–36 (Pa. 1972) (deprivation of freedom of action includes hospital confinement), *disapproved by Commonwealth v. Ellis*, 549 A.2d 1323, 1333 (Pa. Super. 1988).

Moreover, even if we bought into Appellant's claim and considered that his questioning by police was conducted while in custody (whether that custody had been imposed by the police or hospital security acting as agents of the police), we are assured beyond a reasonable doubt that any error in admitting his responses was harmless. The most damning admissions Appellant made to police officers—that the lunch bag in which the drugs were found was his—was persuasively established by other evidence, and the admission that he was an addict was arguably beneficial to the defense given that Appellant was tried for possession with intent to distribute.

As the State points out, the record shows that Appellant asked for his bag to accompany him on his helicopter ride to the hospital. Once there, he told a nurse that the medications he was taking were in his bag and then he reluctantly relinquished it only after the nurses had assured him that they would not take anything from it. Inside the bag the nurses found Appellant's identification, a

13

credit card, and a debit card. None of this evidence was the product of any custodial interrogation, whether by the police or hospital security personnel. Furthermore, the State did not stress during its closing arguments the admissions Appellant made to officers while in the hospital but relied more on the evidence of Appellant's acts indicating ownership of the bag at the crash site and his admissions to nurses at the hospital. Accordingly, even if we assumed that Appellant had preserved this claim for our review and that the trial court erred by not suppressing the statements, we would be compelled by the record to hold that beyond a reasonable doubt any error contributed not a whit to Appellant's conviction or punishment. *See Campbell v. State*, 325 S.W.3d 223, 238–39 (Tex. App.—Fort Worth 2010, no pet.); *Bailey v. State*, 281 S.W.3d 29, 37 (Tex. App.—El Paso 2005, no pet.). Accordingly, we overrule Appellant's fourth issue.

**Conclusion**

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 23, 2014