ACCEPTED
06-17-00190-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
6/1/2018 11:30 PM
DEBBIE AUTREY
CLERK

**Cause No. 06-17-00190-CR**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
6/4/2018 9:01:00 AM
DEBBIE AUTREY
Clerk

**In the Court of Appeals**

**Sixth District of Texas**

**Texarkana, Texas**

---

**CRAIG LYNDON BELL, APPELLANT**

**V.**

**STATE OF TEXAS, APPELLEE**

---

**On Appeal from the County Court at Law**

**Panola County, Texas**

**Trial Court Cause No. 2016-C-0325**

---

**APPELLEE'S BRIEF**

*Gena Bunn*

_____

**GENA BUNN**
**Texas Bar No. 00790323**

**ORAL ARGUMENT**
**NOT REQUESTED**

**Gena Bunn, PLLC**
**P.O. Box 6150**
**Longview, Texas 75608**
**gbunn@genabunnlaw.com**
**(903)804-4003**

**ATTORNEY FOR APPELLEE**

## IDENTITY OF PARTIES AND COUNSEL

**Appellant**                                    Craig Lyndon Bell

**Appellee**                                     State of Texas

**Appellant's Trial Counsel**                    Kyle Dansby
                                                 SBOT No.: 24059180
                                                 P.O. Box 1914
                                                 Marshall, Texas 75761
                                                 (903) 738-6162

**Appellee's Trial Counsel**                     Danny Buck Davidson
                                                 SBOT No.: 0543080
                                                 Katie Nielson
                                                 SBOT No.: 24032791
                                                 108 South Sycamore, Room 301
                                                 Carthage, Texas 75633

**Appellant's Appellate Counsel**                Clay Dean Thom
                                                 SBOT No.: 24088520
                                                 15344 West State Highway 21
                                                 Douglass, Texas 75943
                                                 (936) 715-7144

**Appellee's Appellate Counsel**                 Gena Bunn
                                                 SBOT No.: 00790323
                                                 P.O. Box 6150
                                                 Longview, Texas 75608
                                                 (903) 804-4003

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................ii

INDEX OF AUTHORITIES.................................................................................iv

STATEMENT OF FACTS.................................................................................. 1

SUMMARY OF THE ARGUMENT ...................................................................... 5

ARGUMENT ................................................................................................ 7

      I.     The trial court did not abuse its discretion by denying Bell's motion to suppress his inculpatory statements to law enforcement without first reviewing the videotaped interviews from which those statements were derived. ............................... 7

            A. Bell failed to preserve error regarding the trial court's decision not to view the videotaped interviews .................. 12

            B. Assuming the point of error was preserved, the trial court did not abuse its discretion by declining to view the videos..... 14

            C. Any error was harmless beyond a reasonable doubt........... 15

CONCLUSION AND PRAYER ........................................................................ 17

CERTIFICATE OF SERVICE............................................................................ 18

CERTIFICATE OF COMPLIANCE .................................................................... 18

# INDEX OF AUTHORITIES

## CASES

*Arizona v. Fulminante*, 499 U.S. 279 (1991)............................................................16

*Bailey v. State*, 281 S.W.3d 29 (Tex. App. – El Paso 2005) ...................................16

*Bekendam v. State*, 441 S.W.3d 295 (Tex. Crim. App. 2014)................................12

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................15

*Campbell v. State*, 325 S.W.3d 223 (Tex. App. – Fort Worth 2010) ......................16

*Douds v. State*, 472 S.W.3d 670 (Tex. Crim. App. 2015) ......................................12

*Everitt v. State*, 407 S.W.3d 259 (Tex. Crim. App. 2013)......................................12

*Goodspeed v. State*, 187 S.W.3d 390 (Tex. Crim. App. 2005) ...............................15

*Lankston v. State*, 827 S.W.3d 907 (Tex. Crim. App. 1992)...................................12

*London v. State*, 490 S.W.3d 503 (Tex. Crim. App. 2016) .....................................12

*Miranda v. Arizona*, 384 U.S. 436 (1966) ..........................................................8, 10

*Neal v. State*, 256 S.W.3d 264 (Tex. Crim. App. 2008)............................................7

*Ovalle v. State*, 13 S.W.3d 774 (Tex. Crim. App. 2000).........................................16

*Pena v. State*, 353 S.W.3d 797 (Tex. Crim. App. 2011) .........................................12

*Rothstein v. State*, 267 S.W.3d 366 (Tex. App. – Houston [14th Dist.] 2008).........13

*Shepherd v. State*, 273 S.W.3d 681 (Tex. Crim. App. 2008) ....................................7

*Wilson v. State*, 71 S.W.3d 346 (Tex. Crim. App. 2002) ........................................13

## STATUTES

Tex. Penal Code § 12.42(d) .......................................................................................3

## RULES

Tex. R. App. P. 44.2(a). ...........................................................................................16

Tex. R. App. P. 33.1(a) ...................................................................................... 12, 13

Tex. R. App. P. 9.4(i)(1) ...........................................................................................18

Tex. R. App. P. 9.4(i)(2)(B)......................................................................................18

Tex. R. App. P. 9.5...................................................................................................18

Tex. R. Evid. 103(a)(1) ............................................................................................12

**Guilt-Innocence Phase**

Early on the morning of November 10, 2016, Khurrum "Chris" Chaudhry had just opened and was preparing breakfast at Clayton General Store, the convenience store he owned and operated on the outskirts of Panola County. 3 RR[1] 33-34. He heard the chime on the front door and turned around to see a man whom he did not know[2] enter the store wearing a black jacket, black jeans, and a black hat, his face covered with a black bandana. 3 RR 34-35, 48; *see also* 3 RR 24. Chaudhry asked the man to remove the bandana, but he did not. 3 RR 35-37. Instead, the man pointed a handgun in Chaudhry's face and demanded: "If you don't want to die, give me all the money you have." 3 RR 37. Fearing for his life, Chaudhry removed the cash drawer from the register and placed it on the counter; the masked man removed the cash from the drawer, about $500 to $600. 3 RR 38-40, 41-42, 66. The masked man then proceeded to pull out the telephone lines and credit card machine wires behind the counter. 3 RR 40.

Chaudhry saw the masked man leave the store, turn to the right, and walk along the side of the store toward the back of the building. 3 RR 43. Ten to fifteen

---

[1] "CR" refers to the Clerk's Record of pleadings and orders filed with the district clerk in the course of the proceedings in the trial court, followed by citation to page numbers. "RR" refers to the Reporter's Record of transcribed trial proceedings, preceded by citation to volume number and followed by citation to page numbers.

[2] Chaudhry testified that most of his early-morning customers were regulars with whom he was well acquainted. 3 RR 34.

seconds later, Chaudhry walked out of the store and saw the man fleeing the scene on a motorcycle. 3 RR 43; 3 RR 26. Chaudhry then called the police. 3 RR 44.

Later that day, Bell was involved in a motorcycle accident in Garrison, in neighboring Nacogdoches County. 3 RR 107. Noting that the motorcycle Bell was riding (which was registered in his name) was similar to the one reported to have been driven by the perpetrator of the Clayton General Store robbery, law enforcement identified Bell as a suspect. 3 RR 86, 94-95, 107; SX 6, 14, 15. They located Bell at a house in Garrison, where he was staying with a friend. 3 RR 86. They searched the residence and found clothing – a black jacket, bandana, motorcycle gloves, a black and white motorcycle helmet – that matched Chaudhry's description of the clothing worn by his assailant.[3] 3 RR 92-96; SX 7-10. An unknown amount of cash was recovered from Bell's person. 3 RR 94, 97, 116, 135. No weapon was ever recovered. 3 RR 29, 102, 104, 128, 163.

Although Chaudhry was unable to identify Bell as the perpetrator because of the bandana covering his face, he did positively identify the jacket seized from the home where Bell was staying as the jacket worn by the perpetrator during the robbery. 3 RR 38, 63-65; SX 10. He also identified the helmet and gloves seized at the home as those worn by the masked man. 3 RR 64-65; SX 7, 8, 9. And he

---

[3] Bell identified the clothing as his. 3 RR 99.

identified the motorcycle recovered by law enforcement (which was registered to Bell) as the one he had seen the masked man drive off on. 3 RR 63-64; SX 6.[4]

After his arrest, Bell was questioned by law enforcement. 3 RR 123, 155. He initially denied any involved in the armed robbery, but ultimately admitted to robbing Chaudhry. 3 RR 125-127, 147-148, 155-158. He did claim, however, that he used a BB gun or an air pistol, not a firearm. 3 RR 142-143, 158.

**Sentencing Phase**

Bell's sentencing range – which would have been five to 99 years or life – was enhanced to 25 years to life pursuant to Section 12.42(d) of the Texas Penal Code in light of two prior felony convictions. 4 RR 5; CR 11. At the sentencing hearing on September 25, 2017,[5] the State presented evidence of seven prior felony convictions: (1) a 2005 Nacogdoches County conviction for burglary of a habitation, a second-degree felony for which Bell was sentenced to four years in the Texas Department of Criminal Justice, Correctional Institutions Division; (2) a 2006 Nacogdoches County conviction for unauthorized use of a motor vehicle, a state jail felony for which Bell was sentenced to six months state jail; (3) a 2009 Nacogdoches County conviction for theft, a state jail felony for which Bell was sentenced to nine

---

[4] Another witness passing by Clayton General Store that morning saw a man wearing black exit the store, walk around behind the building, and get on a motorcycle. 3 RR 70. He positively identified the helmet recovered by law enforcement as the one worn by the man he saw, and he testified that the motorcycle and clothing recovered by law enforcement were similar to what he had seen that morning. 3 RR 71-72.

[5] Bell elected to have the trial court assess sentence. CR 95.

months state jail; (4) a 2011 Nacogdoches County conviction for theft, a state jail felony offense for which Bell was sentenced to 18 months state jail; (5) another 2011 Nacogdoches County conviction for theft, a state jail felony for which Bell was sentenced to 18 months state jail; (6) a 2011 Angelina County conviction for unauthorized use of a motor vehicle, a state jail felony for which Bell was sentenced to 15 months state jail; and (7) a 2018 Angelina County conviction for robbery, a first-degree felony offense for which Bell was sentenced to three years in TDCJ-CID.  4 RR 9-10; SX 1-7.

The State also presented evidence of two unadjudicated offenses that Bell was alleged to have committed while out on bond for the instant offense:  a theft on March 14, 2017, and a robbery on June 29, 2017, both in Angelina County.  4 RR 72-74; 4 RR 12-20, 36-38, 49; SX 9.  Bell was also a suspect in grocery store thefts in Alto, Timpson, Tatum, and Nacogdoches.  4 RR 57, 66-67.

Katherine Bell, Bell's mother testified that Bell had family members who supported him, including an 18-year-old daughter who is a freshman in college. 4 RR 81-82.  According to Ms. Bell, Bell has been in and out of jail and prison for most of his adult life, but when he was out, he was a hard worker.  4 RR 83-85.  She also opined that Bell's criminal behavior was attributable to his struggle with drugs, particularly crack cocaine.  4 RR 85- 87.

4

The trial court assessed a sentence of 45 years in the Correctional Institutions Division of the Texas Department of Criminal Justice, to run concurrently. 4 RR 108-109; CR 114, 1121.

## SUMMARY OF THE ARGUMENT

The trial court did not abuse its discretion by denying Bell's motion to suppress his inculpatory statements to law enforcement without first reviewing the videotaped interviews from which those statements were derived.

As an initial matter, Bell failed to preserve error regarding this issue. Bell never argued at trial that he was entitled to have the trial court review the videotaped interviews before ruling on the suppression motion. In fact, the record shows that Bell acquiesced to the trial court's decision not to review the videotaped interviews unless and until the suppression hearing testimony compelled it. And Bell did not offer the videotaped interviews into evidence during the suppression hearing. Bell's argument on appeal does not comport with his objection at trial, thus this point of error must be overruled as not properly preserved.

Moreover, even if Bell had preserved this point of error for review, the trial court did not abuse its discretion by denying the motion to suppress Bell's inculpatory statements with reviewing the videotaped interviews. The record refutes Bell's speculative assertions that the videos contained any evidence that the district attorney communicated with Bell by telephone during the November 14th interview.

5

It was within the trial court's discretion to credit the investigators' testimony and find Bell's statements were voluntarily given.

Finally, in light of the overwhelming evidence proving that Bell was the masked man who robbed Chris Chaudhry at gunpoint, the admission of his inculpatory statement to law enforcement did not contribute to his conviction. Thus, any error in the admission of that statement was harmless beyond a reasonable doubt.

For all the above reasons, this Court should affirm the judgment of the court below.

**I.**   **The trial court did not abuse its discretion by denying Bell's motion to suppress his inculpatory statements to law enforcement without first reviewing the videotaped interviews from which those statements were derived.**

The trial court did not abuse its discretion when it denied Bell's motion to suppress his inculpatory statements to law enforcement.

Bell correctly notes that a trial court's denial of a motion to suppress is reviewed under an abuse-of-discretion standard and that the trial court is the exclusive trier of fact and judge of the witnesses' credibility. *See* Brief of Appellant at 6 (citing *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008); *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008)).

No doubt recognizing the futility of arguing that the trial court abused its discretion by crediting the testimony of two sheriff's department investigators over that of Bell, Bell argues that the trial court abused its discretion by denying the suppression motion without first viewing the videotaped interviews from which Bell's inculpatory statements were derived. But Bell failed to preserve this point of error for appellate review. In any event, the claim is meritless.

**Hearing on Motion to Suppress**

Two before days before trial, Bell filed a motion to suppress his inculpatory statements; significantly, however, the motion did not challenge the voluntariness of

7

Bell's confession, but only questioned whether the requisites of *Miranda v. Arizona*[6] were met.  CR 12, 13 at ¶ 4.  At the suppression hearing, conducted after jury selection, Bell argued that his inculpatory statements to law enforcement were inadmissible because they were involuntary; Bell did not dispute compliance with *Miranda*.  2 RR 97, 99-101.  The gist of Bell's argument was that Bell's confession was rendered involuntary by an alleged intervention of the Panola County District Attorney during the course of the interview.

It appears that at the outset of the hearing, both Bell's counsel and the trial judge believed that the judge would review the videos in advance of the suppression hearing, due at least in part to the fact that the videos contained objectionable extraneous-offense evidence.  2 RR 96-99.  However, the State then indicated that it did not intend to offer the videos themselves but only the officers' testimony relating Bell's inculpatory oral statements.  2 RR 99-101.  The trial court noted that it would nonetheless have a duty to review the videos if they contained "exculpatory evidence."  2 RR 102.

The trial court questioned Bell's counsel specifically regarding whether the videos contained evidence relevant to his voluntariness argument.  2 RR 102-103.

Court:     Do you feel that those tapes create an exculpatory area?

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966) (holding that certain warnings must be given by law enforcement before questioning an individual in custody in order to protect that individual's Fifth Amendment right not to incriminate himself).

8

Counsel: My client does not believe that the statements that he made to law enforcement were freely and voluntarily given, and therefore, if they're not, then they should not come in, and then the State would have to –

Court: Well, I mean, --

Counsel: -- enter evidence –

Court: -- that's a statement. But, I mean, that's not answering my question.

Counsel: Okay.

Court: Are there things in the tape?

Counsel: The, the main thing that I see as "exculpatory" is the fact that he, he denies that, and they continue to go through with that. In terms of have I seen something that the State has said, well, we can show that he was at another place, hypothetically, that I have not been, been given. So I may not understand the, the Court's question myself.

Court: Well –

Counsel: Because, I mean, they want to put on a State, a witness who is going to say "Hey, he ultimately said he did it."

Court: Is there anything in those tapes that shows that the statement was not voluntarily given?

Counsel: Well, my client can testify as to that, Your Honor.

2 RR 102-103. The trial court then stated, "And if . . . it leads into the tapes, we'll go to the tapes," and Bell's counsel agreed. 2 RR 104.

Chris Welk and Jeff Ivy, investigators with the Panola County Sheriff's Office, testified at the suppression hearing regarding their questioning of Bell. They

9

administered the *Miranda* warnings to Bell, and Bell indicated to them that he understood them. 2 RR 110, 124-125. Bell was questioned first on November 10th, the day he was arrested; during that initial interview, Bell denied any involvement in the armed robbery at Clayton General Store. 2 RR 111-112, 114, 128. Bell was questioned again on November 14th, by which time law enforcement had developed additional evidence with which to confront him. 2 RR 128-129. During that interview as well, Bell first denied any involvement in the crime. 2 RR 111-112, 126. But after a cigarette break, during which Bell and the officers discussed Bell's use of methamphetamine, Bell returned to the interview room and admitted to investigators that he had committed the robbery. 2 RR 112-113, 119, 121, 126-127, 129-131. Investigator Welk did not recall anyone else talking to Bell over the telephone during the November 14th interview. 2 RR 120-121. Investigator Ivy recalled a telephone call made to Kevin Jones, one of the investigators with the Panola County District Attorney's Office, at some point during the interview; but Ivy did not testify about the substance of the call or whether Jones ever spoke to Bell. 2 RR 130.

Bell testified at the suppression hearing. He claimed to have little understanding of his *Miranda* rights despite his admittedly lengthy criminal history. 2 RR 141-143, 149-153. He testified that during his cigarette break in the middle of the November 14th interview, the officers queried him about the identities of local

10

drug dealers.  2 RR 145.  Bell also testified that, during the interview, the investigators telephoned an individual named "Bucky," who they claimed was the district attorney.  2 RR 146-147.  Bell testified that the officers then put him on the telephone with "Bucky," who told Bell, "we know you done this.  You go ahead and comply with my officers.  It's going to be like a little slap on the wrist." 2 RR 147-148.  Bell claimed that he would not have confessed to the armed robbery had it not been for this communication with "Bucky," whom he believed to be the district attorney.  2 RR 148.

The State then recalled Investigator Welk to the stand, and Welk denied telephoning the district attorney during his questioning of Bell in the interview room. 2 RR 157.

> Prosecutor: If you called either one of us, it would be on videotape, wouldn't it?
>
> Welk: Yes, ma'am.

2 RR 157.  On cross examination, Welk agreed that there may have been a call made to an investigator in the district attorney's office at some point during the interviews. 2 RR 158.  But he denied that he or anyone from the district attorney's office ever told Bell that he would only get "a slap on the wrist" if he confessed to the offense. 2 RR 158-159.  Bell's counsel rested and closed without offering the videos.  2 RR 156. The trial court denied Bell's suppression motion.  2 RR 159.

11

**A.** **Bell failed to preserve error regarding the trial court's decision not to view the videotaped interviews.**

As an initial matter, Bell has failed to preserve error regarding this claim. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). Further, the trial court must have ruled on that request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262-63 (Tex. Crim. App. 2013). An objection must be made as soon as the basis for the objection becomes apparent. Tex. R. Evid. 103(a)(1); *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011).

To preserve error for appellate review, the complaining party must "let the trial judge know what he wants, why he thinks himself entitled to it, and . . . do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.3d 907, 909 (Tex. Crim. App. 1992); *see also Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014). While courts are not hyper-technical in their examination of error preservation, the point of error on appeal must comport with the objection made at

12

trial. *Bekendam*, 441 S.W.3d at 300; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

Nothing from Bell's written suppression motion, the exchanges during the suppression hearing, or the trial court's ruling suggests that it was apparent that Bell made (or that the trial court ruled on) an argument that he was entitled to have the trial court review the videotaped interviews before ruling on the suppression motion. In fact, the record shows that Bell's counsel acquiesced to the trial court's decision not to review the videotaped interviews unless and until the suppression hearing testimony compelled it. 2 RR 104. And Bell's trial counsel did not offer the videotaped interviews into evidence during the suppression hearing. 2 RR 156.

Bell's argument on appeal does not comport with any objection he raised in his written suppression motion or at the suppression hearing. Thus, Bell forfeited this point of error, and the point of error must be overruled. *See* Tex. R. App. P. 33.1(a); *see also Rothstein v. State*, 267 S.W.3d 366, 373-74 (Tex. App. – Houston [14th Dist.] 2008, pet. ref'd) (concluding that because a defendant's appellate argument did not comport with any objection raised in his motion to suppress or articulated at the suppression hearing, he failed to preserve error). This Court should so find and affirm the judgment of the trial court.

**B.      Assuming the point of error was preserved, the trial court did not abuse its discretion by declining to view the videos.**

Further, even if Bell preserved this point of error for review, the trial court did not err by denying the motion to suppress without viewing the videotaped interviews.

First, the trial court's decision not to view the videotaped interviews is supported by the record. Specifically, contrary to Bell's speculative assertions, there is nothing in the record to indicate that the videos contained any evidence that the district attorney communicated with Bell by telephone during the November 14th interview. In fact, the record indicates the opposite. As the prosecutor aptly noted in her questioning of Investigator Welk: "If you called either one of us, it would be on videotape, wouldn't it? Yes, ma'am." 2 RR 157. And Bell's trial counsel declined to offer the videos into evidence at the suppression hearing. 2 RR 156.

Contrary to Bell's assertions, it *was not* "unchallenged that the Panola County Criminal District Attorney spoke with" him. *See* Appellant's Brief at 15-16. Indeed, while Bell testified that he spoke with someone named "Bucky" who the investigators told him was the district attorney, the investigators denied that the district attorney spoke with Bell during the interview. They further denied that anyone told Bell he would only get "a slap on the wrist" if he confessed. It was within the trial court's discretion to credit the investigators' testimony and find Bell's statements were voluntarily given.

14

Also without merit is Bell's claim that the trial court's decision somehow violated *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that due process requires the State to disclose to the defense evidence favorable to the accused). *See* Appellant's Brief at 18. Bell's trial counsel acknowledged at the suppression hearing that the State had furnished him copies of the videotaped interviews prior to trial. 2 RR 102. Bell's trial counsel had ample opportunity to review the videos prior to trial, and he ultimately declined to offer them at the suppression hearing, a decision this Court must presume was attributable to reasonable strategy. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (holding that on direct appeal, where counsel's reasons for failing to do something do not appear in the record, counsel's conduct must be presumed reasonable).

The trial court did not abuse its discretion by denying Bell's motion to suppress his inculpatory statements without viewing the videotaped interviews from which those statements were derived. Thus, the Court should affirm the judgment of the trial court.

## C. Any error was harmless beyond a reasonable doubt.

Finally, even assuming that Bell preserved this claim for appellate review, and that the trial court erred by not suppressing the statement, such error was harmless beyond a reasonable doubt in light of the record in this case. *See Campbell v. State*,

325 S.W.3d 223, 238-39 (Tex. App. – Fort Worth 2010, no pet.); *Bailey v. State*, 281 S.W.3d 29, 37 (Tex. App. – El Paso 2005, no pet.).

For constitutional error to be harmless, a court must determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). When the constitutional error involves the admission of a defendant's confession, a reviewing court must "exercise extreme caution" before determining that the error was harmless. *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991). Nevertheless, overwhelming evidence can render the admission of a defendant's confession harmless beyond a reasonable doubt *Ovalle v. State*, 13 S.W.3d 774, 785 (Tex. Crim. App. 2000).

As set forth in the Statement of Facts above, there was a wealth of evidence, apart from Bell's inculpatory statement, proving that Bell was the masked man who robbed Chris Chaudhry at gunpoint on November 10, 2016. The black jacket, gloves, and motorcycle helmet recovered from the home where Bell was staying, items which Bell admitted belonged to him, were positively identified by Chris Chaudhry as the clothing worn by his assailant. The motorcycle registered to Bell and recovered hours after the robbery in neighboring Nacogdoches County was identified by Chris Chaudhry as the motorcycle on which his assailant fled the scene. In light of this overwhelming evidence of Bell's guilt, the admission of his inculpatory statement to law enforcement did not contribute to his conviction.

Thus, any error in the admission of Bell's inculpatory statement was harmless beyond a reasonable doubt, and this point of error should be overruled. This Court should, therefore, affirm the judgment of the trial court.

## CONCLUSION AND PRAYER

Based on the foregoing arguments, the State prays that this Court affirm the judgment of the court below.

Respectfully submitted,

*Gena Bunn*

_____
GENA BUNN
Texas Bar No. 00790323

Gena Bunn, PLLC
P.O. Box 6150
Longview, Texas 75608
gbunn@genabunnlaw.com
(903) 804-4003

ATTORNEY FOR APPELLEE,
The State of Texas

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered by electronic mail to counsel for the Appellant, Clay Dean Thomas, on this the 1st day of June, 2018. The document has also been served electronically through the electronic file manager pursuant to Rule 9.5 of the Texas Rules of Appellate Procedure.

*Gena Bunn*
_____
GENA BUNN

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2)(B) because it contains **3.916** words, excluding parts of the brief exempted by Tex. R. App. P. 9.4(i)(1). This brief complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point font.

*Gena Bunn*
_____
GENA BUNN