STATE OF TENNESSEE AND SAMUEL WATSON, Trustee *v.* PRESIDENT AND DIRECTORS OF BANK OF TENNESSEE, and others.

1. STATUTE OF LIMITATION. *Does not apply to bank notes. Sec. 2779 construed.* The statute of limitations barring actions on notes, unless brought within six years from the accrual of the cause of action, does not apply to notes issued by banking corporations under the laws of this State; and this is so, whether the notes have ceased to circulate as money or not, or whether the bank itself is in operation, or has suspended, or has, from any cause, ceased to exist as a corporation.

2. SAME. *When statutes of three years as to personalty and seven as to realty not applicable.* The assignment of the assets of the bank of Tennessee, directed by the act of February 16, 1866, while invalid so far as it sought to give preference as against the statutory beneficiaries, was yet effectual to pass the legal title to the trustee, to whom the assignment was made, and this court having declared the preferences therein void, the holding of the trustee in their favor could not be deemed adverse in such sense as to vest him with the right as against the three beneficiaries. The statutes vesting title to personal property in the adverse holder thereof in three years, and to such holder of realty in seven years, can have no application to this case; besides, it is held that the trustee, having failed to execute the required bond, was appointed a receiver of the court, and, as such, held the assets of the bank for the benefit of those to whom the court might award them, and he is, therefore, estopped from setting up the statute of limitation, either for himself or any persons other than those ultimately entitled.

Case cited: *Moore* v. *Crocket*, 10 Hum., 367.

3. JURISDICTION OF CHANCERY COURT OVER ASSETS OF DISSOLVED CORPORATIONS. Upon the dissolution of a moneyed corporation its assets become trust funds for the benefit of its creditors and stockholders, and while in a court of law no suit could be maintained by or against such dissolved corporation without special authority from the Legislature, yet a Court of Chancery, by virtue of its inherent equity powers, has ever had the right to take charge of the funds and administer them for the benefit of those entitled. Sec. 1493, *et seq.*, of

State, and Watson, Trustee *v.* Bank of Tennessee.

the Code, extending the corporate life of corporations five years for winding-up purposes, does not take away the jurisdiction independently subsisting in the Court of Chancery.

Cases cited: *Ingraham* v. *Terry*, 11 Hum., 576; *White* v. *Campbell*, 5 Hum., 38; *Marr* v. *The Bank of West Tennessee*, 4 Cold., 476.

Authorities cited: 18 How., 480; 15 How., 304; Ang. & Ames on Corporations, sec. 779a; Adams on Eq., 3d American Ed., 229; 3 Mason, 308; 2 Kent, marginal note A, 307; 2 Story's Eq. Jur., sec. 1252; *Upton* v. *Tribilcock*, 1 Otto, 45; 8 Peters, 281; Miss. R., 319; 8 Ga., 493; 3 Edwards' C. R., affirmed in 9 Paige, 152; *Foster et al* v. *Essex Bank*, 16 Mass., 244.

Code cited: Secs. 1493–4–5–6–7.

## FROM DAVIDSON.

Appeal from the Chancery Court of Davidson county. W. S. FLEMING, Ch., sitting by interchange.

E. H. EAST, for Trustee.

JOHN TRIMBLE, for Bank of Tennessee.

HORACE H. HARRISON, for Commissioners of Common Schools.

JOHN FRIZZELL, for County School Fund.

JOHN REID,
W. H. HUMPHREYS, } for Depositors.
NAT. BAXTER, Sr.,

W. F. COOPER,
J. B. HEISKELL, } for the State.

R. McPHAIL SMITH,
ED. BAXTER, } for holders of New Issue.

LEA, Sp. J., delivered the opinion of the court.

Judges MAYFIELD and SNEED dissenting.

State, and Watson, Trustee *v.* Bank of Tennessee.

The Legislature, on the 16th of February, 1866, ordered the president and directors of the Bank of Tennessee to make an assignment for the benefit, *first*, of the school fund, and *secondly*, for all the creditors of the bank whose claims arose before the 6th day of May, 1861, "excluding all claims and demands of all kinds of date after May 6, 1861, as absolutely null and void."

The assignment was made on the 4th of May, 1866, to Samuel Watson, with preferences as directed by the Legislature. On the 16th of May, 1866, the State and Samuel Watson filed a bill in the Chancery Court of Davidson, to carry out the assignment, reciting the act of the Legislature, and the assignment made thereunder, and stating that Samuel Watson, the trustee named in said assignment, was unable to give the bond required by law, and prayed for an injunction against all the creditors of the bank, and the execution of the assignment under the decrees of the court, making all the creditors parties defendants. The injunction was granted on the 21st of May, 1866. The court appointed Samuel Watson receiver, who executed bond as such, which was by the court accepted. To this bill there were several answers. On the 24th of May, 1868, Mark R. Cockrill, on behalf of himself and all other creditors, filed a cross-bill, as did, also, some other depositors, in which they attacked the act of the Legislature of 16th February, 1866, and the assignment thereunder. On the 3d of December, 1872, T. A. Atchison and W. M. Duncan answered the original bill, claiming an indebtedness on the part of

the bank to them as holders of bank notes issued after
the 6th day of May, 1861, and claiming as noteholders
they were preferred creditors.    On the 30th January,
1873, the cause was heard by Chancellor Fleming,
and from a decree rendered in said cause an appeal
was taken to this court, and at a former term a decree
was rendered, holding, among other things, "That the
notes of the bank issued since May 6, 1861, held by
Atchison and Duncan, and set out in their answers,
were legal and subsisting debts of the bank, entitled
to payment at the face value, and having the same
priority of payment out of the assets of the bank as
the notes issued before May 6, 1861," but the ques-
tion whether other holders of the notes of the bank
issued after the 6th of May, 1861, were affected by
any statute of limitation, was reserved, and the cause
was remanded to the Chancery Court.    On the ——
day of ——, 1875, Thomas S. Marr and others filed
their petition in the cause, claiming to be holders of
the notes of the bank issued subsequent to the 6th of
May, 1861, and seeking to have the assets of the
bank appropriated to their payment.    Watson, the re-
ceiver of the assets, and several of the deposit creditors,
file their answers to this petition, and rely upon the
statutes of limitation in bar of the relief.    So much
of the answer as present the pleas of the statutes of
limitation was set down for argument by the petition-
ers, and upon a hearing by Chancellor Marks, the
pleas were held to be insufficient, from which an ap-
peal was taken to this court.

The charter of the Bank of Tennessee expired by

limitation on the 1st of January, 1868.    The respondents first plead the general statute of six years as a bar to petitioners' right of recovery.    By the Code, sec. 2779, all notes "issued or put in circulation as money" are expressly excepted from the operation of the statute.    But it is urged by respondents that bank bills are excepted from the statute of limitations only so long as they circulate as money, and are not protected for a longer period than the bank issuing them had a legal existence, and the court is asked to construe sec. 2779 of the Code to mean "notes issued or put in circulation as money, and so used during the time the bar is sought to be pleaded."    This they insist is the true meaning of said section, and present reasons urged with great earnestness and ability, which we will not now consider, as it is believed that the object of the Legislature in the passage of sec. 2779 of the Code was to secure bank notes in the hands of innocent holders, and that there should be a continuing liability against the bank for their ultimate payment, and that a bank should not be allowed to avail itself of the statute of limitations to avoid payment of its notes.    We are, therefore, of the opinion that the full object and intent sought to be expressed by the Legislature in said section is expressed, and that notes "issued or put in circulation as money" are exempted from the statute, whether still circulating as money or not; whether the bank is in operation or has suspended, or its charter has expired.

It is next insisted for respondents that the statute of three years as to the personalty of the bank, and

of seven years as to the realty, have vested Samuel Watson with the title in trust for the beneficiaries in the assignment.    By sec. 1494 of the Code, upon a dissolution of any corporation, the managers of the business of such corporation at the time of its dissolution, by whatever name known, are the trustees of the stockholders and creditors, unless other persons are appointed by the General Assembly, or by a court of competent authority, and are authorized to settle the business of the corporation, dispose of property sufficient to pay its debts, and divide the remainder, after payment of such debts and necessary expenses between the stockholders.

Upon a dissolution of the bank, its control of its assets ceased, and the Legislature had no power to direct their appropriation, for, as we have just seen, by express legislation its assets became trust property, and whoever had them in charge became trustee for the statutory beneficiaries. · Samuel Watson, upon the dissolution of the bank, came into possession of its assets under an assignment made by the bank under the direction of the General Assembly, while the assignment was valid to convey the legal title to the property; yet, as far as the act of the Legislature and the terms of the assignment, which sought to give preference as against the statutory beneficiaries, the same was invalid and a nullity, and has been so held by this court in this case.    We are of the opinion that Watson, the trustee, held the funds charged with the same trusts as they were in the hands of the officers of the bank before or at the time they were assigned

to him, and that he held not adversely to those whom the court may declare to be the statutory beneficiaries.

Again, Watson having failed to give bond as trustee, was appointed as a receiver by the Chancery Court, and he has held the property, not as a trustee, but as a receiver. The property has been in *custodia legis*, and he is estopped from setting up title under the statute of limitation, either for himself or any one else than those who may be declared entitled to the fund, under the orders and decrees from which he received his appointment, and by which his possession was acquired and continued. 10 Hum., 367.

The next and last plea relied upon is that petitioners did not present their claims within five years after the expiration of the charter of the bank, and can, therefore, have no relief.

Sec. 1493 of the Code gives to dissolved corporations, for five years after dissolution, corporate power to prosecute and defend suits by or against them, settling their business, disposing of their property, and dividing their capital stock; but not for the purpose of continuing their corporate business. And by sec. 1496 of the Code, it is provided, that on application to the Chancellor, and making a proper case, the power of such trustee, or any person appointed receiver of such dissolved corporation, may be continued for such length of time beyond five years as the Chancellor may adjudge necessary for the purposes contemplated in secs. 1493, 1494, and 1495. The object and purpose of these several sections of the Code is to protect the funds of such dissolved corporations for the

benefit of creditors, and making the officers of the bank at dissolution, or whoever is properly appointed, a trustee, it clothes him with the power to use the corporate name in protecting and realizing the assets for the benefit of creditors, and gives him five years in which to do so, providing for an extension of his powers as trustee when the interest of the beneficiaries require it. When the corporation is dissolved, the relation of creditor and debtor is extinguished, the assets become a trust fund, the person in charge a trustee, and the creditor a beneficiary. The statute confers upon the trustee appropriate powers to realize and protect the fund, and the duration of this power is limited; but, as said by the Chancellor, there is no limitation in his favor when he is called to account by the beneficiary. This is not a suit against the bank. A fund is in court, and it is a contest between creditors as to who is entitled.

But again the most that can be claimed for this section of the Code is, that for five years after the dissolution of the corporation the power is given in the corporate name to sue and be sued. Prior to this act no such power existed. No suit could be maintained by or against a dissolved corporation *in its corporate name*, but if the corporate assets had been assigned in trust for the benefit of others, the beneficiaries could, notwithstanding the death of the corporation, come into a court of equity and enforce the collection of the assets in their own name. 11 Hum., 576–7. And this right in equity existed long prior to the adoption of the act of the Legislature granting

power to a dissolved corporation to sue and be sued in its corporate name for five years. It is now well settled that upon the dissolution of a corporation, that the assets become a trust fund for the benefit of creditors and stockholders; and while in a court of law no suit could be maintained by or against such dissolved corporation without special authority from the Legislature, yet a court of chancery has ever had the right to take charge of the funds and apply them to the benefit of those entitled. 18 How., 480; 15 How., 304; Angell & Ames on Corporations, sec. 779a. 4 Col., 476; Adams on Equity, 3d Am. Ed., 229; 3 Mason, 308; 2 Kent, marginal page 307, note A; 2 Story's Eq. Jur., sec. 1252. We shall only notice a few of these authorities. In the case of *Bacon et al.* v. *Robinson et als.*, 18 How., Justice Campbell delivered the opinion of the court, in which he reviews the early and late English cases, as to what becomes of the property of a dissolved corporation, and says: "The tendency of the discussions and judgments of the court of chancery in Great Britain, and of the courts of this country, is to concede the existence of a distinct and positive right of property in the individuals composing the corporation in its capital and business, which is subject in the main to the management and control of the corporation itself, but that cases may arise where the corporators may assert not only their own rights, but the rights of the corporate body. And no reason can be given why the dissolution of a corporation, whether by judicial sentence or otherwise, whose capital was contributed by

shareholders, for a lawful and perhaps laudable enterprise, with the consent of the Legislature, should suspend the operations of these principles, or hinder the effective interference of the court of chancery for the preservation of individual rights of property in such a case. The withdrawal of the charter—that is, the right to use the corporate name for the purposes of suits before the ordinary tribunals—is such a substantial impediment to the prosecution of the rights of the parties interested, whether creditors or debtors, as would authorize equitable interposition in their behalf within the doctrine of chancery precedents." Again he says: "The effects of a dissolution of a corporation are usually described to be the reversion of the lands to those who had granted them, the extinguishment of the debts, either to or from the corporate body, so that they are not a charge nor a benefit to the members." And he then proceeds to show that the instances which support the *dictum* consist of statutes and judgments which followed the suppression of the military and religious orders of Knights, and that such cases afforded no analogy to cases of dissolved monied corporations, and then proceeding to show the unreasonableness and injustice of such a rule, he says: "It is a case, therefore, in which the courts of chancery, upon their well settled principles, would aid the parties to realize the property belonging to the corporation, and compel its application to the satisfaction of the demands which legitimately rest upon it."

Angell & Ames on Corporations sec. 779a, says: "The sound doctrine of equity is that the capital or

State, and Watson, Trustee, *v.* Bank of Tennessee.

property, and debts due to banking, trading or other monied corporations, constitute a trust fund, pledged to the payment of the dues of creditors and stockholders, and that a court of equity will lay hold of this fund, into whatsoever hands it may be, and collect and apply it to the purposes of the trust."

In the late case of *Upton, Assignee,* v. *Tribilcock,* 1 Otto, 45, Justice Hunt delivering the opinion of the Supreme Court, says: "The capital stock of a moneyed corporation is a fund for the payment of its debts. It is a trust fund, of which the directors are the trustees. It is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors in the event of its dissolution. This duty is a sacred one and cannot be disregarded. Its violation will not be undertaken by any just minded man, and will not be permitted by the courts."

But it is insisted that in this State it has been held that when a corporation expires or is dissolved, its personal estate vests in the State, its real estate reverts to the original grantor and his heirs, and the debts due to and from it are extinguished, and the case of *White* v. *Campbell et al.,* 5 Hum., 38, is relied on to sustain this proposition. The only question settled in that case, is that a note executed by a dissolved corporation, and deed of trust to secure such debt, are both void  No question as to what become of the assets of a dissolved corporation could be properly raised in that case, and any opinion of the Judge upon that question was a mere *dictum.*

In the case of *Marr* v. *The Bank of West Tennes-*

*see et als.*, 4 Col., 479, Judge Milligan, delivering the opinion of the court, says: "The doctrine that the assets of an insolvent or dissolved banking or other moneyed corporation constitute a pledge or trust fund for the payment of the corporation debts is now so firmly settled upon the plainest principles of reason and justice that it cannot be shaken or brought into doubt," and again speaking of the assets of such dissolved corporations, he says, "but if they have been distributed among stockholders, or given in the hands of other than *bona fide* creditors or purchasers, leaving debts of the corporation unpaid, such holders take the property clothed with the trust in favor of the corporation creditors; and a court of equity will follow the property and enforce and compel its application to the corporation debts." Citing 2 Story's Eq. Jur., sec. 1252; 15 How., 304; 8 Peters, 281; 3 Mason, 308; Miss. R., 319; 6 Sneed, 513; 8 Ga., 493; 3 Edwards C. R., affirmed in 9 Paige, 152.

Now the assets being trust funds, and the Chancery Court having jurisdiction thereof, does the act of the Legislature, giving such dissolved corporations five years to sue and be sued in the corporate name, interfere with, impair or take away the jurisdiction which the Chancery Court had prior to the passage of such an act? Clearly not. The Code, secs. 1495 and 1496, authorized the trustees to sue for the assets in the corporate name, (giving them a remedy at law which before they did not have,) and this power was continued for five years, and, if necessary, a Chancellor, upon a proper application, might extend the power for

a longer time.    If no such application was made, the power to sue and be sued at law expired, but the right to go into a Chancery Court for the collection of the assets renained unaffected.

In the case of *Foster et al.* v. *Essex Bank,* 16 Mass., 244, the Supreme Court had under service, as to its constitutionality, an act of the Legislature, almost identically the same as sec. 1493 of the Code, except that the time given to such dissolved corporations to sue in their corporate name was limited to three instead of five years, and Chief Justice Parker, in delivering the opinion of the court, says:    "It is in the nature of an administration upon their own estate, and is only doing in a more convenient form what a court of equity might do, viz: making the common fund answerable for the debts which were created on the credit of that fund."

This act of our Legislature is not, and does not purport to be a statute of limitation, but simply to continue the corporate existence, and is an additional remedy to the equitable one, which, however, is unimpaired, for the principle is too familiar to require reasoning or citation of authorities, that the jurisdiction of a court of equity is not taken away by supplying the defects in the legal remedy, on account of which equity originally assumed jurisdiction.    And this act itself does not purport to interfere with the chancery jurisdiction.    When the additional remedy expires, resort must be had to equity just as they must have done originally in such a case, before the more convenient legal remedy was given.    We are therefore of

8—VOL. 5.

opinion that the pleas relied on by respondents are insufficient, and affirm the decree of the Chancellor.


Opinion by McFarland, J.

The first question is, whether the claims of debts of the petitioners are barred by any statute of limitation operating against the debt.

I am of opinion that any defense which would be available, were this a suit by the creditor against the bank in its corporate capacity, would be likewise available in this proceeding in equity by the creditor against the trust fund; as, for instance, if the claim of any petitioner was founded upon a demand upon which a suit against the bank would be barred by the statute of six years, his claim in equity in the present form against the trust fund, would also be barred. I am also of opinion that although petitioners come in as co-complainants with Mark R. Cockrill, yet, as to the statute of limitations, the commencement of their suit dates from the filing of their petitions, and not from the date of the filing of Cockrill's bill. It was held, however, in the *F. & M. Bank of Memphis* v. *Joseph White,* 2 Sneed, that the statute of limitations applicable to notes in general did not apply to bank notes issued and put in circulation as money until demand of payment at the counter of the bank and refusal, and that the suspension of the bank did not change this rule, so as to start the statute of limitations from the suspension of the bank. Following this, sec. 2779 of the Code, in the chapter on

the limitation of actions, provides that "the provisions of this chapter do not apply to actions to enforce payment of bills, notes or other evidences of debt issued or put in circulation as money." So that, as to bank notes issued and put in circulation as money, we have no statute of limitations where there has been no demand of payment. As we have seen, the suspension of the bank does not change this rule, nor do I think that the fact that the bank made an assignment, in which the bank notes in question are excluded from any participation, changes the result. No limitation to a right of action can exist except by positive provision of law. If the bank were now in existence, and this were an action of debt against the bank, the action would not be barred, notwithstanding the lapse of more than six years since the bank suspended payment and made an assignment, excluding also the time the statute was suspended. From this it results that, upon the supposition that this is in other respects a rightful proceeding in equity by the creditor to reach the assets of the bank, the relief cannot be refused upon the ground that the claim itself is barred by the statute of limitations.

The next ground of defense is, that the claims must be rejected because they were not presented within five years next after the expiration of the charter of the bank, in accordance with sec. 1493 of the Code. This section enacts "that all such corporations whose charters expire by their own limitation, or are annulled by forfeiture, or dissolved for any other cause, exist as bodies corporate for the term of five years

after such dissolution, for the purpose of prosecuting and defending suits by or against them, settling their business, disposing of their property, and dividing their capital stock, but not for the purpose of continuing the corporate business."

It is argued, in the first place, that it was a well settled common law rule, that upon the dissolution of a corporation, all debts due to and from it were extinguished, and all suits abated, and of course no new suits could be brought; and the effect of this section was to modify the common law only ·to the extent of continuing the corporate existence five years, but at the end of that time all the consequences follow that otherwise would have ensued upon the dissolution of the corporation . by the expiration of the charter or from other cause.

It is certainly true that the effect of this section is, that for certain purposes the corporate life is extended for five years, but if not still further extended under sec. 1496, the corporation then ceases· to exist; and from this it does certainly result, that after that time no new suit could be brought by or against the corporation, and all existing suits would abate. At the time these petitions were filed the Bank of Tennessee as a corporation was extinct, and no suit could be brought by or against it. But it does not follow that a creditor might not, in equity, seek satisfaction of a just debt out of the assets of the bank still remaining either in the hands of its officers and managers or of its assignees, even conceding the bank entirely out of existence. The assets of a bank are a

trust fund first for the payment of its crditors, even after dissolution. The existence of the corporation is not essential to enable the creditors to reach this fund in equity, if there be no other question. The common law rule, if it ever properly applied to a modern moneyed corporation, has certainly been modified to this extent. *Marr* v. *Bank of West Tennessee*, 4 Col.

Sec. 1494 of the Code enacts that, "upon the dissolution of any such corporation, the managers of the business of such corporation at the time of its dissolution, by whatever name known, are the trustees of the stockholders and creditors, unless other persons are appointed by the General Assembly or by a court of competent authority, and are authorized to settle the affairs of the corporation, dispose of such property as is necessary to pay its debts, and divide among its stockholders the money and property remaining after the payment of such debts and the necessary expenses." This, without more, is a revocation of the common law contended for. And it would seem clear that if the assets are held by trustees under a general assignment, they would stand in the same attitude, unless their attitude be changed by different trusts lawfully declared by the deed of assignment. The trust declared by the above statute could certainly be enforced after the bank ceases to exist.

So I do not think the fact that the bank had ceased to exist when the petitioners begun their proceeding, was of itself fatal to their claim; if so, it would perhaps be as fatal to one class of creditors as another.

But it is further argued that the provisions of sec. 1493 operate as a statute of limitations, limiting all proceedings against corporations, either at law or in equity, against their assets to five years from the expiration, forfeiture or annulling of their charters, in analogy to the statutes limiting actions against the personal representatives of deceased persons. But the language used does not clearly express this meaning. It does not purport to be a statute of limitations; its effect is simply to continue the corporate existence for certain purposes five years longer, leaving the effect of this to be deduced from general principles. This continuation of the corporate existence would prevent for the time the abatement of all suits pending, and would allow new suits to be brought, and allow the corporation to take such action, as a corporation, as might be necessary to dispose of their property, settle their business and divide their capital, but not for general banking purposes. At the expiration of the time, all suits by or against the bank in its corporate capacity would abate, without regard to when they were brought. If intended as a statute of limitations, the right of the creditor ought to be saved, if his action be *brought within the five years*. But upon the expiration of the five years all actions, no matter when brought, would meet the same fate,—not because they were not brought in time, but because there was no longer a person in law in existence to sue or be sued.

Again, sec. 1496 provides that the time may be extended beyond five years upon application to a chan-

cellor. This is clearly inconsistent with the idea of a statute of limitations. A positive limitation cutting off all suits could not, in the nature of things, be left to the discretion of a chancellor, to be extended at his pleasure.

The reason, therefore, that no action can be maintained at law after the expiration of the time of five years being not because the statute is one of limitation, cutting off the demand, but because the bank is no longer in existence to be sued or to defend a a suit. It follows that, as in proceedings in equity to reach the trust fund the corporate existence of the bank is not essential, the proceeding is not affected by this statute.

The next ground of defense is, that the assets of the bank in the hands of Watson, the trustee, at the time these petitions were filed, are beyond the reach of the petitioners, because Watson's title for the benefit of the beneficiaries declared by the trust deed is perfect by the statutes of limitations of three and seven years—the title to the realty by the statute of seven years, and of the personalty in three years. This is said to be upon the principle that adverse possession for the period fixed by the statutes of limitations under a conveyance for the benefit of one set of beneficiaries in fraud of others who are creditors, will perfect the title of the fraudulent vendee for the benefit of the beneficiaries named.

The execution and delivery of the deed of assignment in this case vested the naked legal title to the assets in Watson, the trustee. The assignment was

for the benefit of the creditors of the bank. It being an insolvent corporation at the time, its assets were by law a trust fund, first for the payment of creditors. The act of February, 1866, directing the assignment, undertook to determine what class of debts were valid liabilities of the bank and what were not, and the latter class were directed to be excluded from the benefits of the assignment as null and void. The deed of assignment followed this direction.

This court has decided that the act in question was a nullity so far as it undertook to declare certain claims valid and certain others void; that the trustee should hold the assets for the benefit of the creditors entitled by law, and that the distribution should be declared according to the legal rights of the parties, and not according to the trusts declared by the deed. Moreover, the trustee did not qualify as such, but took charge of the assets, and at once filed his bill asking to be appointed receiver, and to have the fund administered under the direction of the court. He was appointed receiver, and afterwards held the assets in this capacity. Pending the litigation the assets have been in the custody of the court, the receiver being an officer of court.

Bills and answers were filed by some of the excluded creditors, and among them creditors of the same class of the present petitioners (Duncan & Atchison) came in by answer, and by the decree heretofore rendered by this court, their claims were determined to be valid, and their right to share in the trust fund declared. This decree in favor of Duncan

& Atchison would not of itself determine the rights of the present petitioners, except to settle the principle involved—that is, that notes of that class were not void as declared by the act of 1866, and the holders were not deprived of their rights by the deed of assignment.

The question, then, is, are the rights of the present petitioners lost because they failed to come in until the expiration of the time after the assignment necessary to perfect the title to property by the statutes of three and seven years.

The principal creditor preferred was the "school fund"—$1,500,000. This has been declared not to be a void debt. No notes of the bank, which would have been entitled to payment by the act of 1866 and by the deed of assignment, have been presented. The contest is now practically between the depositors and the holders of the notes called the new issue—both classes being excluded by the act of 1866—that is, depositors after May, 1861, were excluded, which, it is said, embrace the greater part. So that if the statutes of three and seven years has protected the assets in the hands of the receiver against the claims of these petitioners, it is not in favor of the creditors declared by the assignment, but practically in favor of any other class of creditors who were also excluded. It would be reversing the rights of priority between the depositors and the noteholders, because the former came in first, although the latter came in before any statute of limitations barred their claims. I suppose the present petitioners might have been cut

off from any participation in the fund by a rule or order of court requiring all creditors to come in and file their claims by a given time; but this not having been done, and the fund being yet undistributed, I now see no legal ground upon which they can be repelled.

There seems to be an apparent hardship in the result, in the fact that the long, laborious litigation by which the assets of the bank have been recovered for the benefit of the creditors has been conducted by others than the present petitioners, and that the benefits will now, in a great measure, be taken by those who did not bear their part in the contest. But I do not see in this a legal ground for changing the result.