IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 19, 2018 Session

**JAMES MENG v. CITY OF MEMPHIS TENNESSEE**

**Appeal from the Chancery Court for Shelby County**
**No. CH-14-0825      JoeDae L. Jenkins, Chancellor**

———————————————————

**No. W2017-01883-COA-R3-CV**

———————————————————

This appeal results from the trial court's dismissal of a complaint for declaratory judgment on the ground of res judicata. In 2011, the City of Memphis issued environmental neglect citations to two adjoining property owners related to damage to the properties that required significant repair. The property owners agreed with the City that repairs were necessary but could not agree on the allocation of the cost of the repairs. The cases were eventually consolidated before the environmental division of general sessions court, and the court entered an order allowing the City of Memphis to proceed with the repair and charge the costs to both owners as tax liens. After the City of Memphis completed the repair, it charged each owner one-half of the cost of the repairs. One owner thereafter filed suit for a declaratory judgment in Shelby County Chancery Court, arguing that it did not owe one-half of the repair costs due to the fact that the repairs were necessitated by neglect to the other property. Following a trial, the trial court ruled in favor of the City of Memphis, finding that the property owner's action was barred by the doctrine of res judicata. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and BRANDON O. GIBSON, J., joined.

Bill M. Wade, Memphis, Tennessee, for the appellant, James Meng.

Prince C. Chambliss, Jr., and Darius Walker, Jr., Memphis, Tennessee, for the appellee, City of Memphis.

**OPINION**

**Background**

Plaintiff/Appellant James Meng owns commercial real estate at 119 S. Court Street in Memphis, Tennessee. Mr. Meng's building shares a common wall with an adjacent property located at 118 Madison Avenue, which is owned by Blake Enterprises, Inc. ("Blake Enterprises"). In late March 2011, part of the roof at 118 Madison Avenue, i.e. the building owned by Blake Enterprises, collapsed, rendering the building a dangerous structure. Defendant/Appellee City of Memphis ("the City"), through Memphis Fire Services, issued a citation to Blake Enterprises on April 20, 2011, for maintaining a dangerous and neglected building in violation of City of Memphis Code of Ordinances ("Code of Ordinances"). During the initial effort to demolish the Madison Avenue property, however, it was determined that the common wall shared by the Madison Avenue property and the Court Street property must be shored. Because of the state of the common wall, the City issued a citation to Mr. Meng on July 29, 2011, for also maintaining a dangerous and neglected building in violation of the Code of Ordinances. Thereafter, the two property owners could not agree on whose responsibility it was to fix the common wall; the property remained in a dangerous condition for over a year due to the dispute.[1] The case involving Blake Enterprises' property and the case involving Mr. Meng's property were consolidated for trial in the Environmental Court division of Shelby County General Sessions Court ("Environmental Court").

The matter was then set for trial on April 10, 2012. The record reveals, however, that the day before trial, the City of Memphis proposed an order allowing the City to shore up the wall and charge the work as a tax lien against the property. The parties thereafter appeared on the trial date and discussed the proposed order prior to the presentation of proof. Mr. Meng, through counsel, generally objected to his involvement in the case, as his building was not the one in need of demolishing. As such, Mr. Meng's position was that "the main dispute is over the percentages" and that Blake Enterprises "should be required to pay for it." Mayor AC Wharton, on behalf of the City, responded that the repairs needed to take place as quickly as possible for purposes of public safety, but that "in the future, . . . there is a way to challenge the placement of the lien on the property. It's not just I go in and do it automatically. There will be. . . legal recourse on that." Another attorney for the City later stated: "[T]he repair of the wall does not prejudice their rights. They can fight over money from now until dooms day [sic], who's going to pay and how it's going to be paid." Counsel for Mr. Meng then specifically mentioned that they did not want an order put down that divided the expenses "50/50" between Mr. Meng and Blake Enterprises. Finally, the following exchange occurred:

---

[1] Mr. Meng filed a complaint against the owners of Blake Enterprises related to the dispute on March 22, 2012. The record on appeal does not indicate what resolution, if any, was achieved in that case.

[Counsel for Mr. Meng]: Your Honor, just to be clear, this is not going to have any, this Order as I understand it that y'all are proposing is not going to have any preclusive effect of res judicata or whatever on Mr. Meng's ability -- again, to try to argue later either before this court or before a different court that [Blake Enterprises] should be required to pay all the costs?

THE COURT: My experience that would answer that question is that there will be a right to address, redress, recourse as to the issue, as always is the issue of money, and whether it's before this court or another court I think that is probably for another day considering this . . . . Considering what the statute says, what that Order is requesting, I don't think it's necessary now to go into the hearing because honestly, first and foremost we have always, this Court has always pursued this hoping that we could re-open the street and then we could deal with these matters that are very important, they're not peripheral issues, but they're very important issues. As to the money and who pays what, we can perhaps deal with that another day.

Following this discussion, the trial court ruled that it would enter the proposed order with some slight modifications. The order reads, in pertinent part:

IT APPEARS TO THE COURT that the parties hereto, by, and through their respective counsel of record have not been able to agree to the ownership or cost of shoring the north wall of 118 Madison /south wall of 119 S. Court; therefore, pursuant to Section 14-8, et seq. of the City of Memphis Code of Ordinances the City of Memphis is hereby ordered to repair as necessary the north wall of 118 Madison/south wall of 119 S. Court immediately so demolition can resume and Madison Street can be re-opened.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the City of Memphis shall enter the aforementioned properties and pursuant to Section 14-8, et seq. of the City of Memphis Code of Ordinances, is hereby ordered to repair as necessary the north wall of 118 Madison/south wall of 119 S. Court and cost of the repair be charged against both 118 Madison and 119 S. Court as a lien by the City of Memphis. It is ordered that the City shall charge the cost of entering and repairing to the Defendants and/or to the land as a tax lien.

The order also contained a handwritten notation that the repairs would "if possible use the plan of previous engineer reports." Later, in September 2012 the Environmental Court entered a second order allowing demolition of the Madison Avenue building and charging the costs of the demolition to Blake Enterprises as a tax lien. No further orders appear in the record from the Environmental Court, but a record from the general

sessions court clerk later entered as an exhibit at trial states that the citation against Mr. Meng was "nolle prosequi."[2] There is no dispute that no appeal was ever taken from any of the Environmental Court's orders.

A lien was eventually recorded by the City of Memphis on Mr. Meng's property pursuant to the April 2012 Environmental Court order. At some point, the City determined that the total cost of shoring up the common wall was $174,336.00. Thereafter, the City of Memphis charged Mr. Meng one-half of that amount, $87,168.00, as property taxes pursuant to Tennessee Code Annotated section 6-54-113(c)(1)(A), discussed *infra*.[3]

In order to dispute the costs allocated to him, Mr. Meng filed a complaint for Declaratory Judgment in Shelby County Chancery Court in May 2014. Therein, Mr. Meng asserted that it was inappropriate to charge him for one-half of the costs when he attempted to brace the property himself at a much lower cost and the demolition was required only due to neglect of the Madison Avenue property. In its answer, the City alleged that Mr. Meng's complaint was barred by the doctrine of res judicata. The parties filed cross-motions for summary judgment, which were denied by order of March 20, 2017. The case went to trial on July 12, 2017.

On June 30, 2017, the trial court, by consent of the parties, filed a joint pre-trial "order" delineating the witnesses and issues to be presented at trial. Included in the contentions of the City was an argument that Mr. Meng's action was barred by Tennessee Code Annotated section 67-5-2803, discussed *infra*. Trial occurred on July 28, 2017. An engineer for the City, the structural engineer hired by the City to complete the repairs, and Mr. Meng testified. The City's engineer testified that he made the decision to charge Mr. Meng with one-half of the costs of repair because it was his understanding that the August 2012 Environmental Court order indicated that the costs would be divided "50/50." The City engineer admitted, however, that he had sent an e-mail to the City's attorney in which he indicated that the City did not care how the costs were ultimately allocated between Mr. Meng and Blake Enterprises. The independent engineer largely detailed the repairs that took place and explained that the repairs needed to shore up the common wall were solely the result of damage to the Madison Avenue property. At the conclusion of the proof, the trial court took the matter under advisement and asked the parties to submit proposed findings of fact and conclusions of law. Thereafter, the trial court entered a final order ruling in favor of the City. Specifically, in the analysis section of the decision, the trial court ruled that "the case is barred by the doctrine of res judicata, including the assessment of costs." Mr. Meng thereafter appealed to this Court.

---

[2] The date on which the Environmental Court case was dismissed is not entirely clear from the record. The latest date noted in the records submitted by the general sessions court was August 26, 2013.

[3] Interest accrued on the amount, combining with the principal amount, to total over $142,000.00 by the time of the trial in this matter.

## Issues Presented

Mr. Meng raises a single issue in this appeal: Whether his complaint is barred by the doctrine of res judicata? The City raises additional arguments concerning the application of Tennessee Code Annotated section 67-5-2803 and whether the Environmental Court order in fact directed Mr. Meng to pay one-half of the repair costs.

## Standard of Review

We review the trial court's findings of fact following a bench trial de novo upon the record with a presumption of correctness, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *Regions Bank v. Thomas*, 532 S.W.3d 330, 336 (Tenn. 2017). "A trial court's decision that a claim is barred by the doctrine of res judicata or claim preclusion involves a question of law which will be reviewed de novo on appeal without a presumption of correctness." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012).

## Discussion

### I.

The trial court in this case granted judgment in favor of the City after concluding that Mr. Meng's complaint was barred by the doctrine of res judicata. As explained by the Tennessee Supreme Court,

> The doctrine of res judicata, also referred to as claim preclusion, bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit. *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987); *see also Barnett v. Milan Seating Sys.*, 215 S.W.3d 828, 834–35 (Tenn. 2007). The primary purposes of the doctrine are to promote finality in litigation, prevent inconsistent or contradictory judgments, conserve legal resources, and protect litigants from the cost and vexation of multiple lawsuits. *Sweatt v. Tenn. Dep't of Corr.*, 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002); *see also Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976) ("[R]es judicata is not based upon any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation."); *Jordan v. Johns*, 168 Tenn. 525, 79 S.W.2d 798, 802 (1935) ("[P]ublic policy dictates that litigation should be determined with reasonable expedition, and not protracted through inattention and lack of diligence on the part of litigants or their counsel.").

***Creech v. Addington***, 281 S.W.3d 363, 376 (Tenn. 2009). Thus, the elements of res judicata have been described as follows:

> (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.

***Jackson v. Smith***, 387 S.W.3d 486, 491 (Tenn. 2012) (citing ***Lien v. Couch***, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998)). The burden to prove the elements of res judicata rests on the party raising the defense. *See* ***Gregory v. Gregory***, 803 S.W.2d 242, 243 (Tenn. Ct. App. 1990) (citing Tenn. R. Civ. P. 8.03) ("In order to succeed on a plea of res judicata, or estoppel by judgment, the party raising the defense must plead it, . . . and must carry the burden of proving it.") (internal citation omitted).

Here, Mr. Meng asserts that the third element—that the actions involve the same claims be asserted in both suits—has not been met. [4] In support, Mr. Meng notes that the Tennessee Supreme Court has held that "even where two claims arise out of the same transaction, the second suit is not barred by res judicata unless the plaintiffs had the opportunity in the first suit to fully and fairly litigate the particular issue giving rise to the second suit." ***Creech***, 281 S.W.3d 36 at 382. Another exception occurs when the new suit involves changed facts or circumstances: "The doctrine of res judicata 'extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-examination of the same question between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants.'" ***Id.*** at 381 (citing ***Banks v. Banks***, 18 Tenn. App. 347, 77 S.W.2d 74, 76 (Tenn. 1934)). Mr. Meng asserts that both exceptions are present in this case. First, Mr. Meng asserts that the issue of the proper allocation of the costs of repair was not fully and fairly litigated in the Environmental Court, citing both the order entered and the transcripts from that proceeding. Similarly, Mr. Meng contends that the issues of the allocation of the repair costs could not be determined in 2012 because the repairs had not yet taken place. We agree on both counts.

---

[4] Mr. Meng expressly concedes that the other elements were met in this case, including that the April 2012 order became final when the demolition was eventually completed. As such, we do not address these elements. We note, however, that this case was finally adjudicated by a "nolle prosequi," which the Tennessee Supreme Court has described as dismissal by the plaintiff "before judgment or decree upon the merits and fixing rights[.]" ***State v. Bank of Tennessee***, 64 Tenn. 101, 150 (Tenn. 1875); *see also* Stacy A. Mayer, D. R*ejecting Double Jeopardy As A Bar to Retrials of Greater Offenses*, 55 Md. L. Rev. 647, 658 (1996) ("A nolle prosequi, by its own terms, is not a conviction or acquittal on the merits of the charge, but merely a strategic decision made by the prosecutor not to proceed on that charge."); *cf.* ***Jackson***, 387 S.W.3d at 491 (requiring judgment on the merits as an essential element of res judicata).

As previously discussed, the party relying on the defense of res judicata has the burden to prove it. *See Gregory*, 803 S.W.2d at 243–44. In order to meet this burden, "the party raising the defense must generally put in evidence the record or a copy of the record of the former case." *Id.* at 244 (citing *American National Bank v. Bradford*, 28 Tenn. App. 239, 188 S.W.2d 971 (Tenn. Ct. App. 1945)). If, however, "the record does not conclusively show that a particular matter was determined in the former proceeding, the party relying on res judicata as a defense must supplement the record by other proof." *Carter County v. Street*, 36 Tenn. App. 166, 252 S.W.2d 803 (Tenn. Ct. App. 1952). In order to meet this burden, "'[p]arol evidence is always admissible to show the fact, even if it appears prima facie that a question has been adjudicated, where the record does not show that it was actually settled.'" *Gregory*, 803 S.W.2d at 244 (quoting *Fowlkes v. State*, 82 Tenn. (14 Lea) 14, 19 (Tenn. 1884)). In sum, "'[i]f there is any uncertainty to the matter formerly adjudicated, the burden of showing it with sufficient certainty by the record or extrinsically is upon the party who claims the benefit of the former judgment." *Id.* (quoting *Bagwell v. Bagwell*, 153 Fla. 471, 14 So.2d 841, 843 (Fla. 1943)).

Here, the record leaves us with considerable uncertainty as to whether Mr. Meng was provided the opportunity to fully and fairly litigate the proper allocation of the costs of the repairs. *Creech*, 281 S.W.3d 36 at 382. As an initial matter, the order entered by the Environmental Court was proposed only on the afternoon prior to the scheduled hearing, giving Mr. Meng little opportunity to prepare a response to the City's request. Moreover, we disagree with the City's assertion that this issue was fully litigated because the Environmental Court order "**explicitly** directed [Mr. Meng] to pay the cost of one-half of the total cost to shore the common wall[.]" (Emphasis added). The term "explicit" generally means "unambiguous[.]" *Garner's Dictionary of Legal Usage* 345 (3d ed. 2011); *see also Webster's New World College Dictionary* 512 (5th ed. 2014) (defining "explicit" as "clearly stated and leaving nothing implied"). The order at issue simply does not explicitly state that Mr. Meng is to pay one-half of the cost of the repairs, as would be the case were the order to contain language providing that the costs would be shared equally, 50/50, 50% to each owner, one-half to each other, or other explicit language. Instead, the City asks this Court to infer from the order that Mr. Meng was to pay one-half of the costs of the repair solely from the fact that the order allowed liens on the property of two owners. In our view, the order is ambiguous at best as to the proper allocation of the costs of the repair.

The transcript from the hearing before the Environmental Court does not help to resolve this ambiguity in the City's favor. *See Gregory*, 803 S.W.2d at 244 (holding that the court may consider the entire record in the prior case, as well as relevant parol evidence). Instead, the transcript reveals that the parties clearly understood that issues regarding the allocation of the costs of the repairs, i.e., whether and to what extent Mr. Meng would be liable for the costs of repair, would not be adjudicated by the Environmental Court order. Indeed, the transcript from the April 10, 2012 hearing before

the Environmental Court indicates that the trial court expressly agreed that res judicata would not bar subsequent action, either in the environmental court or in another court, seeking to allocate the costs of the repairs. Thus, the record makes clear that the issue was neither actually adjudicated nor fully and fairly litigated.

We likewise agree that new facts support allowing Mr. Meng's complaint to proceed. Here, at the time of the Environmental Court's April 2012 order, the repair was not yet completed. Indeed, the order reflects the uncertainty regarding the repairs, directing the City to utilize a repair plan previously submitted by an engineer "if possible." The record on appeal reveals that additional facts came to light following the repair, including the increased costs over a previous bid for the repair and the nature of the damage that necessitated shoring the common wall.[5] As previously discussed, res judicata "does not prevent a re-examination of the same question between the same parties where in the interval the facts have changed or new facts have occurred[.]" *Creech*, 281 S.W.3d 36at 381. In some ways, this rule is analogous to rules regarding ripeness. For example, it is well-settled that a dismissal on lack of ripeness grounds is, of course, not a decision on the merits for the purposes of res judicata. *Pendleton v. Mills*, 73 S.W.3d 115, 129 (Tenn. Ct. App. 2001) (quoting 13A Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 3532.1, at 137 (2d ed. 1984)). The converse must therefore also be true: res judicata generally should not prevent adjudication of an issue left unadjudicated due to issues of ripeness. Here, it appears that the parties generally understood that questions regarding the allocation of the costs to each property owner could not be fully adjudicated in 2012, prior to the completion of the repairs. Given these considerations and the unique facts of this case, it does not appear that the City has met its burden to show the application of res judicata to this case with sufficient certainty. *See Gregory*, 803 S.W.2d at 244.

Although not cited by the parties, we are aware of one unreported case that appears to come to an opposite conclusion, *Carter v. Townsend*, No. 02A01-9108-CV-00179, 1991 WL 268355 (Tenn. Ct. App. Dec. 18, 1991). *Carter*, however, is readily distinguishable from the facts of this case. In *Carter*, the plaintiff filed a civil warrant in general sessions court, seeking actual, consequential, and punitive damages for "willful, wanton, and gross negligence" in repairing plaintiff's vehicle. *Id.* at *1. The general sessions court entered judgment for the defendant. *Id.* No appeal was taken from this judgment. Less than a month later, the plaintiff filed a second action for damage to his vehicle, this time obtaining a judgment for $1,970.00. *Id.* On appeal to the circuit court, the defendant asserted that the action was barred by the doctrine of res judicata. *Id.* In response to the motion to dismiss, the plaintiff filed the affidavits of the judge who had presided over the first action; in the affidavit, the judge stated that the judge had only

---

[5] We express no opinion as to whether these facts have any bearing on the City's right to enforce the lien at issue.

8

awarded possession of the vehicle because the issue of damages was not ripe for consideration. *Id.* The trial court refused to consider the affidavit and ultimately dismissed the case on the basis that it was barred by the final judgment in the first action. *Id.*

We affirmed the judgment of the trial court, noting that the judgment in the first case involved the same parties, the same cause of action, and was final and on the merits. *Id.* at *2. The plaintiff argued, however, that the final order in the earlier action was not intended to adjudicate the issue of damages, citing the judge's affidavit. Because the judgment in the first case clearly adjudicated the claim for damages that was at issue in the civil warrant by ruling in favor of the defendant, we held that the plaintiff's second case was more akin to collateral attack on the earlier judgment. *Id.* We held, however, that the plaintiff could not attack a facially valid judgment on the basis of extrinsic evidence, i.e., affidavits. *Id.* As such, the trial court's judgment dismissing the case on the basis of res judicata was affirmed. *Id.* at *3.

The same is not true in this case. First, as previously discussed, the August 2012 order from the Environmental Court does not actually address the allocation of the costs of repair. Thus, unlike in *Carter*, Mr. Meng simply is not required to collaterally attack a facially valid judgment in order to obtain relief. Additionally, the evidence that this issue was not fully and fairly litigated is not met by resorting to parol affidavits, but is evident from the order and the transcripts contained in the record from the earlier proceeding. Finally, although not cited in *Carter*, this Court has held in a reported case that parol evidence is admissible in order to show that a matter was not actually settled in an earlier action. *See Gregory*, 803 S.W.2d at 244.

The case largely relied upon by the City in its brief is also distinguishable. In *Johnson v. Kear*, No. C/A 126, 1987 WL 5964 (Tenn. Ct. App. Feb. 3, 1987), the plaintiffs were issued a citation for non-compliance with a setback ordinance. *Id.* at *1. The court presiding over the citation eventually found the plaintiffs in continuing violation of the ordinance and ordered the plaintiffs to cure the defect or else be fined. *Id.* The plaintiffs did not appeal from that ruling but later filed a separate writ of certiorari action arguing that the ordinance was improper, inapplicable, and overreaching. *Id.* at *2. The defendants filed a motion to dismiss, arguing the relief was barred by the doctrine of res judicata. The trial court denied the motion and entered judgment in favor the plaintiffs. *Id.*

This Court reversed, concluding that res judicata indeed barred the action. *Id.* at *3. In reaching this result, the Court held that the plaintiff was essentially seeking relief from the judgment in the prior proceeding. *Id.* at *5. As such, the Court concluded that the plaintiffs sought no relief which could not have been raised in the prior proceeding. *Id.* at *5.

Again, the facts of this case are not the same. Here, Mr. Meng is not seeking relief from the April 12 Environmental Court order because that order simply does not address the allocation of the costs of the repair. Moreover, there does not appear to have been any argument in **Johnson** that new facts had come to light that would be material to any allocation decision. Finally, the **Johnson** decision, having been decided well before our supreme court's decision in **Creech**, contains no discussion of whether the plaintiffs in **Johnson** were allowed a full and fair opportunity to address this issue. *See generally* **Creech**, 281 S.W.3d 36 at 381–82.

In sum, the undisputed facts fail to show that Mr. Meng had a full and fair opportunity to litigate the allocation of the costs of repair in the Environmental Court. Likewise, new facts are presented in this case that simply could not have been known at the time of the August 2012 order. As such, we conclude that the City failed to meet its burden to show that res judicata should bar Mr. Meng's action. The trial court's judgment in that respect is therefore reversed.

## II.

The City raises an additional argument on appeal in support of judgment in its favor: that Mr. Meng's action is barred by Tennessee Code Annotated section 67-5-2803. Section 67-5-2803 was enacted in 2014 and provides:

> In order to promote equality and uniformity of taxation, except as provided in this part, § 67-5-1806 or § 67-5-2507, no person, public official, governmental entity or court shall have the power or authority to waive, compromise, remit, prorate, apportion or release property taxes, penalty, interest or court costs nor the first lien securing the same.

According to the City, section 67-5-2803 bars any attempt by Mr. Meng to avoid the payment of the costs of repair because such costs are in the nature of property taxes and the August 2012 Environmental Court order specifically allowed a tax lien on Mr. Meng's property for the costs of repair. We agree that the costs of remedying anti-neglect violations "shall be collected by the municipal tax collector or county trustee at the same time and in the same manner as property taxes are collected." Tenn. Code Ann. § 6-54-113(c)(1)(A). Where the owner fails to pay the costs, "they may be collected at the same time and in the same manner as delinquent property taxes are collected and shall be subject to the same penalty and interest as delinquent property taxes." *Id.*

The City urges this Court to apply this statute to bar Mr. Meng's action in its entirety. Despite the fact that this statute was enacted over four years ago, no case has analyzed the statute, much less considered its applicability to costs allowed under section 6-54-113(c)(1)(A). Moreover, this issue was not raised promptly in the trial court, apparently having been raised for the first time in a pre-trial order filed nearly three years after the filing of the City's answer. Perhaps in response to the dearth of authority

presented to it on this argument, the trial court's ruling on the effect of section 67-5-2803 was minimal at best. In the conclusions of law section, the trial court notes the language of the statute and states that "in accordance with" the statute, Mr. Meng is required to pay his "share" of the costs, i.e., one-half of the costs of repair. In the "analysis" section of the trial court's order, however, the only basis for denying Mr. Meng's requested relief was the doctrine of res judicata. Respectfully, the trial court's bare statement that Mr. Meng is required to pay the costs of the repair "in accordance" with the statute is insufficient to show that the trial court actually considered whether the statute prevented Mr. Meng from seeking redress through the present action, particularly where the trial court failed to address this issue in the "analysis" section of its order.

Generally, this Court will decline to consider an argument on appeal that was not actually ruled on by the trial court. *See, e.g.,* **In re Halley M.**, No. M2016-01596-COA-R3-PT, 2017 WL 4158688, at *3 (Tenn. Ct. App. Sept. 19, 2017) (declining to rule on an argument that a statute barred a claim because "a finding on such an issue properly ought to be made initially by the Trial Court, not this Court. As the Trial Court did not rule upon this issue, the issue is not properly before this Court, and we decline to address it at this time."); **Blick v. Kent**, No. 01A01-9708-CV-00393, 1998 WL 787527, at *4 (Tenn. Ct. App. Nov. 13, 1998) (declining to rule on an alternative issue that was not ruled upon by the trial court). The applicability of section 67-5-2803 to the facts of this case are not so certain as to excuse analysis. As previously discussed, no case has ever considered this statute. Questions regarding the application of the statute, however, have puzzled some learned judges, leading them to seek input from the Tennessee Attorney General regarding the retroactivity of the statute. *See* Tenn. Op. Att'y Gen. No. 15-45 (May 15, 2015). Issues of retroactivity may also be relevant to this case as the City seeks to apply a 2014 enactment to a 2012 order. As such, we decline to consider the applicability of section 67-5-2803 but rather remand to the trial court for reconsideration of this issue.

### Conclusion

The judgment of the Shelby County Chancery Court is reversed and remanded for further proceedings in accordance with this Opinion. Costs of this appeal are taxed to Appellee, the City of Memphis, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE